Rebecca I. DE WITT, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 78–1235.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1978.
Decided Feb. 26, 1979.

---

Jack A. Wilson, Vincennes, Ind., for plaintiff-appellant.

Bradley L. Williams, Asst. U.S. Atty., Indianapolis, Ind., for defendant-appellee.

Before FAIRCHILD, WISDOM,[*] and WOOD, Circuit Judges.

WISDOM, Circuit Judge:

Rebecca I. De Witt appeals from the summary judgment entered by the district court in favor of the United States. The question this case presents is whether the plaintiff's malpractice claim against the United States under the Federal Tort Claims Act is so conclusively time-barred by § 2401 of the Act that a summary judgment was proper. We hold that it was not. We reverse and remand.

I

Mrs. De Witt, plaintiff-appellant, a veteran of the Armed Forces of the United States, has suffered from rheumatoid arthritis dating back to 1960. During the years 1971 and 1972, she underwent five operations at the Veterans Administration (VA) Hospital in Hines, Illinois, for treatment of her arthritis. The dates and descriptions of these operations are as follows:

[*] The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

| September 24, 1971 | Synovectomy and stabilization of the right wrist |
| November 12, 1971 | Synovectomy and stabilization of the left wrist |
| December 20, 1971 | Placement arthroplasty of the metacarpophalangeal joints with Swanson Metacarpophalangeal prosthesis of the second to fifth joints of the right hand |
| April 19, 1972 | Placement arthroplasty of the metacarpophalangeal joints with Swanson prosthesis of the second to fifth joints of the left hand |
| September 6, 1972 | Removal of the Swanson prosthesis from the middle finger of the left hand |

She was under continuous care at the Hines hospital, as either an admitted patient or an outpatient, from September 1971 until November 28, 1972.

On August 19, 1975, she filed an administrative claim for damages with the VA under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* She alleged that she had received negligent treatment for her hands at the Hines hospital. The VA denied the claim on March 29, 1976, on the ground that it was time-barred because it had accrued more than two years before the date she filed her administrative claim. On April 29, 1976, De Witt reasserted the same claim by filing this action against the United States. The district court granted the Government's motion for summary judgment on December 15, 1977, on the ground that De Witt's cause of action was time-barred, under 28 U.S.C. § 2401.

## II

28 U.S.C. § 2401(b) provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

We have been unable to find any case in the Seventh Circuit dealing with when a claim accrues under Section 2401(b) for negligent medical treatment.

The cause of action in a medical malpractice suit brought against the Government accrues when "the claimant [has] discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice". *Quinton v. United States*, 5 Cir. 1962, 304 F.2d 234, 240 (Tuttle, J.).[1] Judge Tuttle derived this rule from the "blameless ignorance" approach earlier applied by the Supreme Court to the statute of limitations on claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* See *Urie v. Thompson*, 1949, 337 U.S. 163, 170, 69 S.Ct. 1018, 1025, 93 L.Ed. 1282.

The *Quinton* rule has been accepted by many courts. See *Kubrick v. United States*, 1977 E.D.Pa., 435 F.Supp. 166, 180 (citing cases), aff'd, 3 Cir. 1978, 581 F.2d 1092. It is, however, susceptible to varying interpretations. *Kubrick*, a malpractice suit against the Government arising out of treatment at a VA hospital, provides a good example of how the rule can be literally interpreted to thwart the policy supporting it. In that case, the Government read "the rule to mean that the statute begins to run, without more, when the plaintiff becomes aware that he has been injured as the result of a physician's treatment". 435 F.Supp. at 180–81. The district court disagreed. It held that the limitations period does not begin to run if the patient has exercised reasonable diligence in investigating the cause of his injury and found no negligence.

A related case is *Portis v. United States*, 4 Cir. 1973, 483 F.2d 670, in which the Court of Appeals for the Fourth Circuit held that the statute does not begin to run if the patient, though aware that a negligent act had been performed, was unaware that the act had injured him. Similarly, in *Jordan v.*

1. In *Cooper v. United States*, 7 Cir. 1971, 442 F.2d 908, 911–12, this Court recognized the existence of the *Quinton* standard. In that case, however, the plaintiff alleged that Government officials had negligently failed to provide him with medical treatment, not that they had negligently treated him. The Court concluded that the plaintiff's cause of action accrued when he knew or should have known that no treatment was forthcoming. 442 F.2d at 912. That decision is consistent with our holding in this case.

*United States*, 6 Cir. 1974, 503 F.2d 620, a plaintiff suffered injury to one of his eyes while undergoing surgery for his nose. He knew that his eye injury was attributable to the surgery, but was not aware that the procedure constituted malpractice. He brought suit against the Government three years after the operation. The Court of Appeals for the Sixth Circuit held that the limitation period did not begin to run until the plaintiff learned of the malpractice.

A literal reading of the *Quinton* rule would have barred the approaches taken in *Kubrick, Portis*, and *Jordan*. These decisions properly recognized that the *Quinton* rule must be flexibly construed to promote the sound policy that "blameless ignorance" should not result in the loss of the right to assert a malpractice claim. Indeed, the Courts of Appeals for the Fourth Circuit and the Tenth Circuit have now extended the "blameless ignorance" approach to its logical conclusion. In *Bridgford v. United States*, 4 Cir. 1977, 550 F.2d 978, the Fourth Circuit held that "until a claimant has had a reasonable opportunity to discover *all* of the essential elements of a possible cause of action—duty, breach, causation, damages— his claim against the Government does not accrue". 550 F.2d at 981–82 (emphasis in original). The Tenth Circuit has recently adopted the *Bridgford* standard. *Exnicious v. United States*, 10 Cir. 1977, 563 F.2d 418, 420.[2]

We agree with the Third, Fourth, Sixth, and Tenth Circuits that § 2401(b) should not bar suit before a potential medical malpractice claimant has a reasonable basis for believing that he has a claim against the Government. Therefore, we adopt the *Bridgford* standard as the law of this Circuit. Restating the rule to encompass both a subjective and an objective test, we hold that the statute of limitations does not begin to run until the claimant has discovered, or has had a reasonable opportunity to discover, all the essential elements of a possible cause of action.

## III

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". F.R.Civ.P. 56(c). The date when a cause of action accrues is, of course, a question of fact. *E. g., Ciccarone v. United States*, 3 Cir. 1973, 486 F.2d 253, 256. Summary judgment, then, is usually inappropriate on that question. In this case, the district court determined that there was no genuine issue of fact whether De Witt's cause of action had accrued more than two years before she filed her administrative claim. To reach this conclusion, the district court must have believed that De Witt's deposition testimony revealed, as a matter of law, that she knew or should have known that her cause of action accrued prior to August 19, 1973.

Before this Court, the Government does not argue that the record indicates that, as a matter of law, De Witt should have known of the accrual of the cause of action prior to August 19, 1973. Rather, the Government seeks to uphold the summary judgment on the theory that her deposition testimony shows that she actually knew of the accrual before that date.

In reviewing the record on appeal from the granting of a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [the affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion". *United States v. Diebold, Inc.*, 1962, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (per curiam). Judged under this standard, we are unable to affirm this summary judgment. We conclude that reasonable persons could differ on whether De Witt's deposition testimony

2. The Third Circuit's opinion in *Kubrick* suggests that it also finds merit in the *Bridgford* standard. *See* 581 F.2d at 1096–97.

revealed that she knew that her cause of action had accrued before August 19, 1973. *Compare Central Oil & Supply Corp. v. United States,* 5 Cir. 1977, 557 F.2d 511, 515; *Goodman v. Parwatikar,* 8 Cir. 1978, 570 F.2d 801, 803.

■ The import of De Witt's deposition testimony, when viewed in the light most favorable to her, is not as clear as the Government suggests. In her administrative claim and her complaint in this action, she alleged that both of her hands were damaged by negligent surgery and postoperative care. We find nothing in the record that conclusively indicates that, before August 19, 1973, she knew that the cause of action had accrued for any injury to her right hand. Indeed, all of her statements relied upon by the Government to show her knowledge refer only to either the surgery upon, or postoperative treatment of her left hand. A triable issue of fact is present, then, on when the cause of action accrued for the alleged injury to her right hand.

■ De Witt's deposition testimony does indicate that she was disappointed by the outcome of the surgery upon her left hand. The Government argues that the cause of action as to negligent surgery upon that hand accrued at least by April 1973. At that time, De Witt consulted a private physician about the condition of her left hand. According to that physician's deposition, De Witt informed him that her left hand "did not turn out as it was supposed to have" and that the use of that hand had become impaired. Viewed in the light most favorable to De Witt, we cannot find that her statement was an unequivocal admission that she was aware that all of the elements of a possible cause of action for negligent surgery had occurred. A surgical procedure is not malpractice simply because it does "not turn out as it was supposed to have". To recover damages, the patient must prove that the disappointing outcome of the surgery resulted from a breach of care by medical personnel. As we read De Witt's testimony, it fails to reveal beyond doubt that she was aware that any breach of care or procedure, constituting malpractice, had

occurred in the surgery upon her left hand. Summary judgment, then, was inappropriate on whether that cause of action had accrued prior to August 19, 1973.

The Government strongly asserts that De Witt's deposition testimony reveals that her cause of action for negligent postoperative treatment to her left hand had accrued before August 19, 1973. It appears from her testimony that the physician who conducted most of her postoperative treatment, a Dr. Larson, administered it in an abusive manner. During the postoperative treatment period, De Witt had complained that Dr. Larson wantonly disregarded whether he was damaging her left hand or causing her excessive pain when he removed the cast on that hand, removed the stitches in it, and fitted a brace on it. She characterizes these remarks as simply complaints about the doctor's "bedside manner", and not evidence that she knew that her hand had been damaged as the result of negligent treatment. She also contends that the VA doctors assured her that her hand would improve if she adhered to the regimen of postoperative therapy they had prescribed. She asserts that, notwithstanding Dr. Larson's rough treatment of her left hand, she continued to follow the prescribed postoperative therapy until December 1973. A fair inference may be drawn that her adherence to the therapy indicates that she trusted her doctors and believed that they had not performed any negligent acts that could have resulted in damage in her hand. *Compare Toal v. United States,* 2 Cir. 1971, 438 F.2d 222, 225.

After carefully reviewing the record in the light most favorable to De Witt, we conclude that reasonable persons could disagree on whether prior to August 19, 1973 she knew that all the elements of her cause of action on negligent postoperative care to her left hand had occurred. It is for the finder of fact to determine whether her actions in following the therapy speak louder than both her words of complaint about Dr. Larson and any other portions of her deposition testimony that might tend to show that she had the sort of knowledge

that would preclude her recovery in this action.

In conclusion, we note that the district court supported its summary judgment order by making findings of fact regarding De Witt's knowledge of when her cause of action accrued. These findings of fact carry with them the inference that this case presents issues of fact not properly resolved by summary judgment. *Cf. A R Inc. v. Electro-Voice, Inc.*, 7 Cir. 1962, 311 F.2d 508, 513.

The fact question concerning the plaintiff's reasons for delay and whether she had a reasonable opportunity to discover all the elements of a possible cause of action are not so conclusively removed that summary judgment is proper.

 It is important to note, however, that the party who claims the benefit of an exception from the operation of a statute of limitations bears the burden of showing that he is entitled to it. *See Baker v. F & F Investment*, 7 Cir. 1970, 420 F.2d 1191, 1199, *cert. denied*, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49; *Lukenas v. Bryce's Mountain Resort*, 4 Cir. 1976, 538 F.2d 594, 597. Thus, on remand De Witt will bear the burden of showing that her delay in asserting her claim was the result of blameless ignorance.

Reversed and Remanded.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

Not sharing the views of my colleagues, I respectfully dissent.

The *Quinton* statute of limitations rule,[1] as the majority suggests, is susceptible to varying interpretations. Some reasonable flexibility is no doubt desirable, but when flexibility becomes an unwarranted extension, then I believe we are permitting the statute of limitations to dissolve into a statute of indefiniteness. Under the majority opinion the triggering of the statute of limitations is indefinitely suspended until claimant has discovered or had reasonable opportunity to discover, not just the alleged negligent acts, but all the essential elements of a possible cause of action—duty, breach, causation and damages. Such a rule involving legal as well as factual issues becomes, in my view, unrealistically subjective. We may expect under this rule for courts to spend as much time trying to determine when the statute of limitations began to run as with the merits of a claim.

As laudable as concern may be for claimants with possible meritorious claims, even though negligent in their timely prosecution, I believe that flexibility should be restrained by remembering that the statutory waiver of sovereign immunity[2] is to be liberally construed, not in favor of claimants, but "in favor of repose for the United States." *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971).

In *Quinton* the court noted that the majority rule then was that the cause of action for malpractice accrued on the date of the negligent act even though the claimant was unaware of his plight. That rule was so harsh, the court determined, as to justify modification. The rule adopted was stated to be that a claim for malpractice accrued against the Government when the claimant discovered, or in the exercise of reasonable diligence should have discovered the acts constituting the alleged malpractice. I would leave that rule as it is.

If there may be any merit in some further liberalization of the *Quinton* rule as accomplished by the majority, this case serves as little justification for it. My view necessitates some detailed consideration of the facts. In her deposition, claimant stated specifically that her complaint was only about the treatment of her left hand by VA doctor Larson.

Let us review in this montage of her own words taken from her tardy administrative claim and deposition the critical events. I would expect that most will agree that at least the doctor-patient relationship here revealed is fortunately rare.

1. *Quinton v. United States*, 304 F.2d 234, 240 (5th Cir. 1962).

2. 28 U.S.C. § 2401(b).

He [Dr. Larson] came into my room on the following Monday, without holding my arm or without warning, cut the hand down and let it fall.

\* \* \* \* \* \*

A. Yes, I was scheduled to have it off on Thursday. And so then he put the tool that he cut it off over the middle finger and pushed the middle finger down and clipped the clipper underneath the cast and proceeded to cut it off. In the meantime, I was yelling with pain and asking him not to do that. And I kept telling him it is hurting and he shouldn't do that, *you are injuring my hand*, and he told me to shut up or he could take the same tool and cut my tongue out.

Q. What sort of tone of voice did he use?

A. Sort of snide and he proceeded to cut the cast off *and that is when I started having problems with the middle finger.*

Q. *So you began suffering pain during the time he was cutting the cast off?*

A. *Yes.*

Q. *And that is somewhere around April of 1972?*

A. *Yes.*

Q. And did he say anything else to you during the removal of this cast?

A. He had to try to fit the brace on my hand and it was the right hand brace that I had used on the right hand and instead of him adjusting the brace first and then trying it to my hand, he put it on my hand and held the brace and grabbed right above the prosthesis and tried to fit the brace on my hand.

Q. Did that cause you to suffer pain?

A. Yes, it sure did.

Q. Did you tell him about the pain you were suffering?

A. Yes, I did. He kept right on going.

Q. *Was it from that time on that you had difficulty with your middle fingers?*

A. Yes.

Q. *Were you suffering pain in your other fingers in your left hand from that time?*

A. *From that time but not too much before.*

(Emphasis added).

\* \* \* \* \* \*

Larson had no foreknowledge of the Pope brace, I was to wear, and proceeded to try to fit it to my hand, squeezing the part where the implants are. When he removed the cast, my little finger and index finger had rotated on the shaft. At the stub of the ulna, I kept complaining and he wouldn't examine it.

The record contains further evidence of claimant's awareness from the very beginning of the problems which form the basis of her claim, but for the purposes of this dissent, I see no need to further pursue those details. Within two years of claimant's last VA treatment, claimant also consulted her private physician about these complaints.

I would affirm as being barred by the statute of limitations.