Jack STEELE, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 78–1985.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1979.

Decided June 12, 1979.

George C. Pontikes, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U. S. Atty., Mary M. Thomas, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and JAMESON, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiff, Jack Steele, appeals from the district court's dismissal of his complaint against the United States. The facts as revealed in the record and the briefs of the parties are as follows: According to the plaintiff's complaint, he was injured on August 15, 1975, while installing runway lights and signs on an inactive runway at O'Hare International Airport in Chicago, Illinois. While connecting wires to a transformer box, he sustained an electrical shock because the current to the box was on. Unknown to the plaintiff, an agency of the United States, the Federal Aviation Administration, operated and controlled a remote power switch regulating the flow of electricity to the transformer. The plaintiff alleges that the FAA negligently left the electric current on and negligently failed to warn the plaintiff of the remote power switch. He seeks damages for personal injuries, pain and suffering, medical expenses, and lost wages.

---

* The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

■ The plaintiff initially commenced an action in the district court against the FAA on August 12, 1977. The district court dismissed this complaint because the plaintiff had failed to first file an administrative claim with the appropriate federal agency as required by the Federal Tort Claims Act. The plaintiff has not appealed from that dismissal.[1]

On September 14, 1977, the plaintiff filed an administrative claim with the FAA which rejected it because the accident had occurred more than two years prior to the filing of the claim, see 28 U.S.C. § 2401(b), and because the claim form failed to specify a sum certain as required by Department of Justice regulations, 28 C.F.R. § 14.2 (1978).[2] The plaintiff amended the claim form to state a sum certain and resubmitted it to the FAA. On October 17, 1977, the FAA again returned the form, explaining as it had earlier, that the claim was untimely.

On January 4, 1978, the plaintiff filed his present complaint in federal district court, generally alleging that before November 1, 1975, he neither knew, nor in the exercise of reasonable diligence could have known, of the remote power switch or the control of

the United States or its agents over it. On June 21, 1978, the district court granted the defendant's motion to dismiss on the ground that the claim accrued on the date of the injury, which was more than two years before the filing of a claim with the FAA. The only issue raised in this appeal is whether the two-year statute of limitation for presenting tort claims to federal agencies prevents the plaintiff from prosecuting this action. We hold that it does and affirm the judgment of the district court.

The applicable statute of limitation, 28 U.S.C. § 2401(b) provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . . .

■ We note initially a matter which seems to have been assumed by the parties and which we think is implicit in the prior decisions of this court.[3] Although the liability of the government under the Federal Tort Claims Act is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C.

---

1. Although the matter is not before us, we note that the trial court's action was clearly correct. Although the plaintiff's first complaint did not contain a jurisdictional statement, it is clear that the only basis for the court's jurisdiction was the Tort Claims Act, 28 U.S.C. § 1346(b), which provides in pertinent part: "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . ." Another provision of the Act provides: "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death . . . , unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." 28 U.S.C. § 2675(a). In Best Bearings Co. v. United States, 463 F.2d 1177 (7th Cir. 1972), this court held that the requirement that an administrative claim be filed prior to commencement of an action in the district court was a jurisdictional requirement which could not be waived. Furthermore, we noted that "[t]he mere filing of a suit does not meet the requirement of

§ 2675(a) of first presenting a claim to the appropriate federal agency." Id. at 1179.

2. The courts that have considered the application of the regulations have generally required strict adherence to the "sum certain" requirement which facilitates administrative settlement of claims against the government. See College v. United States, 572 F.2d 453 (4th Cir. 1978), affirming 411 F.Supp. 738 (D.Md.1976) (upholding validity of the requirement); Caidin v. United States, 564 F.2d 284 (9th Cir. 1977) (class claim which fails to specify individual damages is inadequate); Melo v. United States, 505 F.2d 1026 (8th Cir. 1974) (no amount specified); Caton v. United States, 495 F.2d 635 (9th Cir. 1974) (amount of claim only specified as "unknown at this time"); Avril v. United States, 461 F.2d 1090 (9th Cir. 1972) (no amount specified); Bialowas v. United States, 443 F.2d 1047 (3d Cir. 1971) (amounts claimed listed as "estimates"). See generally Annot., 13 A.L.R. Fed. 762 (1972).

3. See, e. g., De Witt v. United States, 593 F.2d 276 (7th Cir. 1979); Cooper v. United States, 442 F.2d 908 (7th Cir. 1971); Chicago, Rock Island & Pacific Ry. v. United States, 220 F.2d 939 (7th Cir. 1955).

§ 1346(b), when a "claim accrues" is determined by federal law. *Kossick v. United States,* 330 F.2d 933 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); *Tyminski v. United States,* 481 F.2d 257, 262–63 (3d Cir. 1973); *Portis v. United States,* 483 F.2d 670, 672 n. 4 (4th Cir. 1973); *Quinton v. United States,* 304 F.2d 234 (5th Cir. 1962); *Jordan v. United States,* 503 F.2d 620, 622 (6th Cir. 1974); *Reilly v. United States,* 513 F.2d 147, 148 (8th Cir. 1975); *Hungerford v. United States,* 307 F.2d 99, 100–01 (9th Cir. 1962), *noted in* 63 Colum.L. Rev. 536 (1963); *Exnicious v. United States,* 563 F.2d 418, 420 n. 6 (10th Cir. 1977).[4]

■■■ We can do little more than restate the reasons for a federal rule given in *Quinton v. United States,* 304 F.2d 234 (5th Cir. 1962). Congress, by enacting a two-year statute of limitation for tort claims against the government, clearly manifested its intention to have a uniform rule defining when such claims become stale, and "[t]he simple fact is that [the] law respecting the accrual of a particular claim cannot be divorced from the . . . law fixing the period after accrual within which the plaintiff can bring suit on an accrued claim." *Id.* at 238. Application of the laws of the various states to determine when claims accrue would thus "permit the states to do indirectly what Congress clearly forbids them to do directly by increasing or decreasing their statutes of limitations on particular claims," *id.* at 236, and would leave the government subject to diverse local rules on accrual.[5] This would undercut the policy of repose for the United States—the very purpose of the two-year limitation. *See Cooper v. United States,* 442 F.2d 908, 912 (7th Cir. 1971).

■■■ That the question of when a claim accrues is governed by federal law does not, of course, end our inquiry since we must still determine what is the appropriate rule.[6] The Restatement of Torts provides the following general rule for when a cause of action accrues. Restatement (Second) of Torts § 899, comment *c* (1977). Ordinarily, a statute of limitation does not begin to run until the tort is complete, *i. e.,* when there has been "an invasion of a legally protected interest of the plaintiff." In a negligence

---

**4.** Only the First Circuit departs from the nearly unanimous consensus of the Courts of Appeals on this issue. *See Hau v. United States,* 575 F.2d 1000 (1st Cir. 1978); *Tessier v. United States,* 269 F.2d 305 (1st Cir. 1959) (applying lex loci rule).

**5.** The danger of nonuniformity which the application of state rules of decision with respect to when a claim accrues is by no means speculative. *See, e. g., Quinton,* 304 F.2d at 236; *cf. Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1200 (1950):

The typical statute of limitations provides that the period within which an action may be brought is to be computed from the time the "cause of action" accrues. By employing this phrase, the legislatures have adopted a concept, developed in the substantive law, delineating that combination of facts or events which permits maintenance of a lawsuit; the time of occurrence of the last of these requisite facts is thereby made the critical point of initial inquiry. Although prima facie it seems just to compute the time limitation on the plaintiff's remedy from the time when a suit could have been maintained, the considerations which determine the factual components to be pleaded and proved by the plaintiff do not themselves necessarily fix appropriate time limitations for the initiation

of an action. It is not surprising, therefore, that the courts have not always literally carried out the directive that the period begin when the cause of action accrues. The commencement of the statutory period has occasionally been delayed despite the existence of a theoretical right to recovery, until the occurrence of some later event the absence of which made suit impossible or improbable: for example, until the plaintiff learned of the wrong or until substantial damage occurred. Conversely, limitations may begin before suit could first have been successfully maintained if the plaintiff is able to postpone occurrence of the only lacking element, as by not giving notice or not making demand. Substantive law is not, therefore, the sole criterion for determining when time starts to run against the plaintiff's remedy.

*See also* Restatement (Second) of Torts § 899, comment *c* (1977) (the courts have not been consistent in applying rule that action may be commenced only within a specified period after the cause of action arises).

**6.** For a collection of federal cases applying the statute of limitation to a variety of claims which may be maintained under the Federal Tort Claims Act, see Annot., 29 A.L.R. Fed. 482 (1976).

action where damage is the last essential element of the tort, the "cause of action for negligently harming a person or thing is complete when the harm occurs." *Accord, Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1201 (1950) ("if harm is deemed the gist of the action, the occurrence of harm marks the beginning of the period"). Moreover, under the early cases the limitations period began as soon as the injury regardless of the plaintiff's knowledge of the tort. *See* Restatement (Second) of Torts § 899, comment *e* (1977).

The plaintiff, however, maintains and the government apparently concedes that under the federal standard a claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the tort.[7] This standard, the so-called discovery rule, originated in malpractice cases. *See* Comment, *Federal Torts Claims Act—Interpretation of Two Year Period of Limitations,* 34 Tenn.L.Rev. 421, 430 (1967), and has recently been adopted by this court as the proper standard for medical malpractice claims in *De Witt v. United States,* 593 F.2d

276 (7th Cir. 1979). Yet, to say that the claim accrues upon discovery does not resolve all the difficulties in determining when a claim accrues, because it remains to be delineated what should be discovered. The court could, for example, look to the plaintiff's discovery of the acts leading to the injury, the character of those acts, *e. g.,* negligence, or the injury itself. Hence, in *De Witt* we adopted a further elaboration of the discovery rule: " '[U]ntil a claimant has had a reasonable opportunity to discover *all* of the essential elements of a possible cause of action—duty, breach, causation, damages—his claim against the Government does not accrue.' " *De Witt,* 593 F.2d at 279 (quoting *Bridgford v. United States,* 550 F.2d 978, 981–82 (4th Cir. 1977)).

Arguably if the standard adopted in *De Witt* were applied in the present case, we would have to reverse the trial court's judgment. According to the plaintiff's general allegations, he neither knew, nor in the exercise of reasonable diligence could have known, of the remote power switch and the

---

7. Whether this discovery standard is the general rule for all federal tort claims or merely an exception to the general rule set forth in the Restatement, *see supra,* is a matter which we need not decide here, because we hold that if the discovery rule does govern here, it is sufficient in this case that the plaintiff knew or should have known of the injury. *But see Cooper v. United States,* 442 F.2d 908, 911 (7th Cir. 1971) (implying that the general rule is that the statute of limitation begins to run "at the first moment where a wrongful invasion of a protected interest might give rise to a cause of action" and that the discovery rule applies only "in certain instances" or due to "the specific circumstances of the case.")

The bulk of the cases applying the discovery rule cited by the parties are medical malpractice cases, and, as we note *infra,* are distinguishable from other personal injury claims on that basis. Although some cases involving claims other than malpractice seem to declare a general federal rule that a claim accrues only upon discovery, *see, e. g., N.L.R.B. v. Allied Products Corp.,* 548 F.2d 644, 650 (6th Cir. 1977), those statements are either dicta or made in cases presenting claims quite different than the one made here.

This uncertainty as to the standard for when a claim accrues is also apparent in the regulations that federal agencies have adopted under

the Federal Tort Claims Act. Most agency regulations do not attempt to define the meaning of "accrues." The two agencies which have, both curiously enough within the Defense Department, have reached different results. Department of the Army regulations provide:

> Except in medical malpractice cases, a claim accrues on the date on which the alledged [*sic*] wrongful act or omission results in some actionable injury or damage to the claimant or his decedent. In medical malpractice cases, accrual is postponed until such time as the claimant or, if the claimant is a minor, some person acting for him discovers or reasonably should have discovered the acts or omissions which are alleged to be wrongful.

32 C.F.R. § 536.29(b)(3) (1978). Air Force regulations, on the other hand, provide:

> The times [*sic*] of claim accrual is governed by Federal, not State law. A claim accrues at the time the claimant discovers, or in the exercise of reasonable diligence should have discovered, the existence of the act which resulted in the damage for which the claim is made. (*Hungerford v. United States,* 307 F.2d 99 (9th Cir. 1962).

32 C.F.R. § 842.105(a)(2) (1978). Neither of these regulations, of course, is applicable in the present controversy.

FAA's control over it. If we accept these allegations as sufficient, arguably the plaintiff had no reason to know of the cause of his injury or, more arguably still, the breach of a duty owed to him. Regardless of the correctness of the relaxed discovery rule in medical malpractice cases,[8] we do not believe that the refinement of the discovery rule should govern when a claim accrues for more ordinary torts such as the one suffered by the plaintiff here.

Several factors distinguish medical malpractice claims from the more usual types of personal injury torts. First, many of the consequences of medical malpractice remain undiscovered until after the limitations period if it commences upon the actual injury. Restatement (Second) of Torts § 899, comment e (1977). Thus, the injury itself may be unnoticed. Second, "the nature of the tort itself and the character of the injury will frequently prevent knowledge of what is wrong, so that the plaintiff is forced to rely upon what he is told by the physician or surgeon." Id. Hence, even if the injury is apparent, the causal connection between the doctor's acts and the injury may be difficult to ascertain. Finally, even if the injury is obvious and is seemingly the consequence of the doctor's conduct, whether that conduct constituted a departure from standards of due care is often difficult for a layman to judge. See, e. g., Kubrick v. United States, 581 F.2d 1092 (3d Cir. 1978), cert. granted, —— U.S. ——, 99 S.Ct. 1211, 59 L.Ed.2d 453 (1979); cf. Developments in the Law—Statutes of Limitations, 63 Harv. L.Rev. 1177, 1201 (1950) (ordinary rules for determining when a cause of action accrues are particularly harsh when "the plaintiff is unqualified to ascertain the imperfection, as in the case of negligent performance of expert or professional services"). See generally W. Prosser, The Law of Torts § 30 at 144–45 (1971) (discussing the emergence of the discovery rule and noting its application in other areas of professional negligence).

In contrast, in this case the plaintiff received a severe electric shock. His injury was immediately apparent. The amount of his damages, if not immediately ascertainable, was capable of reasonable estimate shortly after the trauma. The immediate cause of his injury—the live electric current—was apparent and should have put him on notice of an invasion of his legal rights. Compare Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (contraction of silicosis from inhalation of silica dust over a thirty-year period). Under these circumstances, if the discovery rule governs plaintiff's claim at all, see note 7 supra, it is sufficient that the plaintiff knew or should have known of the last essential element of the tort, i. e., the damage. The governing rule is that when the injury coincides with the negligent act and some damage is discernible at that time, the cause of action accrues and the statute of limitation begins to run immediately. Because the injury is apparent, it is the duty of the victim of the tort to discover ·the negligent acts and file a claim within two years of the injury. Beech v. United States, 345 F.2d 872 (5th Cir. 1965) (plaintiff slipped on floor of government hospital due to excessive wax); Mendiola v. United States, 401 F.2d 695 (5th Cir. 1968); cf. Tinkoff v. United States, 211 F.2d 890 (7th Cir. 1954) (rejecting the argument that a claim does not accrue until the plaintiff acquires evidence sufficient to prove the commission of a tort).

We are aware, of course, that statutes of limitation result in hardship to plaintiffs in some cases. See, e. g., Lien v. Beehner, 453 F.Supp. 604 (N.D.N.Y.1978) (action untimely even though government employment of tortfeasors was shielded from both the public and the plaintiff); Baker v. United States, 341 F.Supp. 494 (D.Md.1972) (action untimely even though plaintiff had no reason to know that conduct of the federal employee-tortfeasor was

---

8. We note that the Supreme Court has granted certiorari in Kubrick v. United States, 581 F.2d 1092 (3d Cir. 1978), a decision relied on by this court in De Witt. See —— U.S. ——, 99 S.Ct. 1211, 59 L.Ed.2d 453 (1979).

within the scope of employment).[9] Nevertheless, we must also be cognizant that the statutes are designed to protect defendants, not only from incurring liability on stale claims because of lost evidence, *see Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944), but also from bearing the burden of defending against stale claims regardless of whether liability is eventually established. Consequently, the operation of statutes of limitation was intended to be somewhat mechanical and ordinarily unrelated to the merits of the litigation. *See Northern Metal Co. v. United States,* 350 F.2d 833, 836–37 (3d Cir. 1965). Although the peculiarities of medical malpractice claims may necessitate a less rigid approach, ordinarily the application of the statute of limitation should not be dependent on contested issues of fact. The United States should not be forced to go to trial simply to obtain the statute's protection. We should not dissolve the statute of limitation into a doctrine of laches.

Where, as here, the injury is immediate and manifest and is close in time with the allegedly negligent conduct, the claim accrues instantly and is untimely if not filed within two years of the accident. The judgment of the district court, therefore, is affirmed.

---

9. We note parenthetically, however, that this does not appear to be one of those cases. Although the plaintiff's second complaint alleged that he neither knew, nor in the exercise of reasonable diligence could have known, of the FAA's control over the remote power switch until November 1, 1975, he filed his first complaint on August 12, 1977, just three days short of two years after the accident. His allegations about the hidden nature of the remote switch and his inability to discover the FAA's involvement seem conveniently designed to make his subsequent administrative claim that was filed in October, 1977, appear timely, and, given the timing of his first complaint, these allegations are questionable. The bar to the plaintiff's action appears not so much the result of the accrual of his cause of action when he suffered the injury, as his waiting until the last minute to take action and his confusion about the proper means of commencing a tort claim against the United States. The two-year limitations period was intended to afford those injured by torts committed by agents of the government a reasonable time to discover the facts, seek legal advice, and prepare their claims. The reasonable inference to be drawn from the history of the plaintiff's claim is that he did not use this time diligently.