**Jessie M. VAN LIEU, Plaintiff,**

v.

**UNITED STATES of America and Hertz Corporation, Defendants.**

No. 81–CV–848.

United States District Court,
N. D. New York.

July 6, 1982.
As Amended July 20, 1982.

Weldon Law Firm, Watertown, N. Y., for plaintiff; Robert M. Weldon, Watertown, N. Y., of counsel.

George H. Lowe, U. S. Atty., Syracuse, N. Y., for defendants; Joseph A. Pavone, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff originally brought suit in state court against Michael Adams and Hertz Corporation to recover damages suffered as a result of an automobile accident. The accident took place July 20, 1978. The state court action was filed July 10, 1981. The United States of America (Government) petitioned for the removal of the case to federal court in August of 1981. They supported that petition with certification that Michael Adams was a captain in the armed services, and was acting within the scope of his employment at the time of the accident pursuant to 28 U.S.C. § 2679(d). The petition requested that the action against Michael Adams be deemed a tort action against the Government, pursuant to 28 U.S.C. § 1346(b).

As soon as the petition had been filed, the Government moved to dismiss, alleging lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Because such a motion cannot be addressed without knowing if Captain Michael Adams was acting within the scope of his employment at the time of the accident, this Court responded by granting leave to the plaintiff to request a hearing to make that determination.

The Government asserts that the case must be dismissed if Captain Adams was acting within the scope of his employment, for clearly the requisites of 28 U.S.C. § 2675(a) had not been complied with, thereby rendering this Court without the proper jurisdiction to review the case.

To understand the basis for such a motion, a brief review of the Federal Tort Claims Act is necessary. Until the enactment of that legislation in 1948, the United States Government enjoyed complete immunity from suit for torts committed by its agents and employees. *Feres v. United States,* 340 U.S. 135, 139–40, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950). The action of Congress in 1964 created a general waiver of immunity for the torts of its employees, subject to certain statutory limitations and exceptions created then and by amendment in 1966.

Of primary importance is the statutory requirement that proper administrative claim precede any suit in federal court. This prerequisite imposed by 28 U.S.C. § 2675(a) provides in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of office or employment unless the claimant shall have first presented the claim to the appropriate federal agency . . .

In the instant case, no administrative claim was ever filed, for up until the Government moved to dismiss, the plaintiff was entirely unaware that Michael Adams had any connection with the military. Testimony at the hearing revealed that Captain Adams never revealed his military identification to the police officer at the scene of the accident. He produced only his Kansas driver's license. He was dressed in civilian clothing, and was driving a rental car with no military insignia.

Although the police officer may have assumed Captain Adams was involved in some way with the military, he entered no notation of military service on the accident report. Plaintiffs produced a witness to the accident who also testified that Captain Adams was, in every outward manifestation, a civilian. The plaintiff, Ms. Van Lieu corroborated this testimony by describing that no military identification was produced for her. She further stated that she had only learned within the last three months that Captain Adams was a member of the military.

Captain Adams took the stand, and described that he was in the Army Corps of Engineers on regular duty in Kansas. He had been assigned to Fort Drum near Watertown, New York for a two-week stay. He left Kansas on July 20, 1978, with travel orders to arrive no later than noon on Friday, July 21, 1978. He received verbal authorization to obtain a rental car upon arrival in Syracuse, New York. He did rent a car upon arrival Thursday afternoon, July 20, 1978. He drove to Fort Drum, checked in, received a room key, and was told to report for further processing at 9 o'clock Friday morning. Captain Adams then checked the dinner situation at the mess hall, and decided to take dinner on his own in town. His orders contained no restrictions as to travel in and around Fort Drum. It is important to note that he filed travel vouchers for total reimbursement of expenditures for the rental car and off-base meals.

The accident occurred as Captain Adams was driving the rental car into town for his dinner on July 20, 1981. He recalled the events of the accident, and although not sure, he guessed that he did tell the police officer at the scene of the accident that he was in the Army. He did not say anything about military status to the accident victim, Ms. Van Lieu.

Captain Adams further reiterated that he was not under any military duty on the evening of July 20, 1978 to perform specific tasks. His commanding officer, Lieutenant Colonel Moeller, had issued his orders, which outlined temporary duty to 1) secure transportation to Fort Drum, 2) to evaluate an engineering project at Fort Drum, and 3) to return to Kansas.

Although at the time of the hearing, the Government asserted that no Army records of Captain Adams' duty authorization could be found, those records have since been produced following additional search. The vouchers reveal that Captain Adams arrived at Fort Drum, completing his travels at 4:45 p. m. on Thursday, July 20, 1978.

His travel authorization stipulates that he should have a valid government driver's license, and further that the uniform required was, "utility shirt, trousers, cap, and combat boots." The authorization provides for civilian clothing, but does not describe what should be worn en route.

More importantly, however, is the specific instruction that, "[G]overnment quarters and messing facilities will be used when available." Captain Adams stated that the mess hall was either closed, or there was a long line on Thursday evening. He, therefore, chose to go instead into town. Upon further questioning, he stated that in-processing officers told him there was no problem about going to dinner in town. However, nowhere does the testimony reveal that a meal was in fact unavailable on the Army base. Captain Adams simply stated that there was a reason why he didn't go in, but that he didn't remember what it was.

In sum, it appears that Captain Adams was generally within the scope of his military duty at the time of the accident. It is unclear whether he was violating orders by obtaining a meal off-base, but he did apply for, and receive, reimbursement for that dinner meal. Furthermore, he reported the automobile accident to his superiors both at Fort Drum in New York, and at his regular duty base in Kansas. Clearly it was his understanding that the accident had occurred within the scope of his employment, and his employer strenuously advocates that position.

It is equally clear that the military status of Captain Adams was in no way communicated to the plaintiff until a time following the two-year period of limitations for the filing of administrative claims.

Finally, it is important to note that Ms. Van Lieu responsibly attempted to preserve her rights by the timely filing of her state claim [1] pursuant to CPLR § 214 (3 years).

These factors cumulatively describe this Circuit's recognition of an exception to the statutory administrative filing require-

1. This Court notes that exclusive of the result of proceedings in federal court, Ms. Van Lieu has properly preserved her action in state court against defendant Hertz.

ments of 28 U.S.C. § 2675, in *Kelley v. United States*, 568 F.2d 259 (2d Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed. 124 (1978).

Even the most narrow view of the *Kelley* case finds appropriate application in the instant case. The court in *Harris v. Burris Chemical, Inc.*, 490 F.Supp. 968, 971 (N.D. Ga.1980) distilled the rhetoric of the *Kelley* opinion into a brief equitable test centering on the plaintiff's subjective understanding. That opinion stated:

> The court finds that in a case in which the plaintiff prior to filing suit knew or had reason to know that the driver was (1) a federal employee (2) acting within the scope of his employment at the time of the accident, the requirement of Section 2675 applies. The plaintiff is required to seek administrative remedies; filing in state court is not a means of avoiding this requirement. Where the driver of a motor vehicle is sued individually in state court because the plaintiff did not know and had no reason to know that the defendant was (1) a federal employee (2) on federal business at the time of the accident and the United States subsequently removes the action to federal court under Section 2679, no exhaustion of administrative remedies is required.

> This formulation of the rule fits the congressional purpose more closely than the Second Circuit's broader rule. An injured person fails to file a claim with a federal agency and brings suit in state court either because he is aware of the involvement of a federal employee but does not know the requirements of the Federal Tort Claims Act or because he is unaware of the facts which would trigger the requirement of filing a claim with a federal agency. Ignorance of the law which results in filing a state court action should not be allowed to thwart the congressional intent of requiring the filing of administrative claims. On the other hand, nothing in the removal provisions indicates that Congress intended that a person who innocently files suit in state court because he is unaware of the facts

which would indicate that the requirements of the Tort Claims Act must be met, should suffer the extreme penalty of having his suit dismissed.

Clearly Ms. Van Lieu fits this exception, and this Court sees no reason why the outcome of *Kelley, supra*, shall not apply to this case.

The Second Circuit has rejected plaintiff's attempts to bring tort claims against the government in a variety of instances where the government's identity was known, but for one reason or another, the action was not timely commenced in the administrative process. *Contemporary Mission v. U. S. Postal Service*, 648 F.2d 97 (2d Cir. 1981); *Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

The more difficult position in this Circuit is represented by not only the present case, but similarly, by a case previously decided by this Court. *Lien v. Beehner*, 453 F.Supp. 604 (N.D.N.Y.1978). The plaintiff, Lien, filed a malpractice claim against a medical facility for misdiagnosis. The facts of the case do not reveal when that diagnosis was made, other than mentioning it took place sometime prior to July, 1974. No mention of continuing treatment was discussed and it is unlikely that any took place. The appropriate statute of limitations was three years under CPLR § 214, for malpractice acts occurring before July, 1975. Plaintiff Lien filed claim in September of 1976, which may very well have been outside of the prevailing statute of limitations. This Court instead focused on the fact that the time from the date of discovery to the date of filing exceeded the two year administrative filing. Although the date of discovery may not be used to compute the administrative time for filing, of course the date of misdiagnosis would only increase that period of time. At any rate, it is unclear whether the plaintiff had even properly preserved his state claim by timely filing in the first place.

Instead of addressing the timeliness of plaintiff's state claim, that case attempted to distinguish the factual implications involved in *Kelley, supra.* A footnote in *Lien* describes, "[T]he facts of this case, however, do not present any stronger basis for applying equitable estoppel principles, to preserve the claim, than those in a case of an automobile accident where the plaintiff is ignorant, until too late, of the fact that the allegedly negligent party is a government employee acting within the scope of his employment. *See, e.g., Kelley v. United States,* 568 F.2d 259 (2d Cir. 1978)." That footnote further interjects that the plaintiff in *Kelley* did file their state claim "within two years of the accident." *Lien,* at 606 n.2.

Of course a major focus in *Kelley* was the government's purposeful inaction following institution of the suit, which resulted in allowing the plaintiff's ignorance to continue beyond the statutory two year limitation period.

In light of *Kelley*'s progeny, this Court now focuses on the characterization of the accident victim who remains too late ignorant of the government's involvement, rather than the chance that a timely state filing should fall within the administrative two year period.

Under the present circumstances, Captain Adams was under instructions to carry a government operator's license, he was also under an obligation to report this accident to his superiors. Furthermore, he and his commanding officer insist he was in the course of his employment at the time of the accident. It is no less odious to this Court that Captain Adams withheld any expression of his position to either the police officer, or the accident victim, than was the intentionally evasive attitude expressed by the government in *Kelley.*[2]

■ Surely the government is under no obligation to notify every potential claimant of its identity and involvement, for that would be impossible. However, this Court

sees a difference in the cases involving uninvited accident to a claimant. Both here and in *Kelley,* the plaintiff's involvement with a governmental entity was through no affirmative effort of their own. The accident in each resulted in injury to the plaintiff, and in both cases the government withheld the necessary identity to enable the plaintiff's institution of proper administrative claim.

Although the *Kelley* case described that the plaintiff had filed a state claim within the two year period, the success of maintaining a proper suit against the defendant should not turn on the chance of which day the suit was filed so long as the plaintiff responsibly pursues their claim with regard to the prevailing statute of limitations. Language from the *Kelley* opinion carries special import here, for the Second Circuit noted that

> [N]o questions of immunity or jurisdiction are genuinely involved. The Congress, in setting up the tort claims procedure, now embodied in Chapter 171 of Title 28, waived sovereign immunity of the United States except for those classes of cases listed in Section 2680.... that the act ends the immunity defense does not furnish a ground for niggardly interpretation of the Act.

568 F.2d at 262. Clearly the rule articulated in *Harris, supra,* should be applied here, for the specific facts herein have no precedent in this Circuit.

District courts within this Circuit treating similar circumstances have factually distinguished their cases from the plaintiff's total ignorance of federal involvement, and dutiful state court involvement in *Kelley. Barrett v. Hoffman,* 521 F.Supp. 307, 318–19 (S.D.N.Y.1981) (knew of government involvement); *Kantor v. Kahn,* 463 F.Supp. 1160, 1161 (S.D.N.Y.1979) (citing the facts in Kelley as different and "unique," for the plaintiffs there "were unaware that the defendant driver was a government employee." At 1161 n.4).

**2.** Clearly this differs from *Lien,* where it would have been impossible for the government to

have detected any tort liability until informed by the plaintiff's claim.

The only other treatment of this issue in this Circuit is found in *Lien, supra*, which this Court now recognizes to be too limited in its factual analysis to serve as proper precedent in either this case, or in similar cases involving statutory filing requirements.

Other courts have relied upon *Lien*, but have done so without sufficient basis.[3] The Seventh Circuit cites *Lien* in a case where the original action was filed within the two year period. *Steele v. United States*, 599 F.2d 823, 825 (7th Cir. 1979) (albeit only three days before the two year limitations period had expired).

Similarly, the court in *Flickinger v. United States*, 523 F.Supp. 1372, 1375 (W.D.Pa. 1981) refused to find an exception to the filing requirement. That court drew its authority not only from the plain language of the statute, but also from prior judicial interpretation. Judge Cohill did state that, "courts almost uniformly have dismissed complaints where the plaintiff failed to file a claim with the appropriate federal agency within the two year limitation period." *Id.* at 1375.

However, the cited authority falls outside the Third Circuit, and is primarily represented by this Court's decision in *Lien*. Only two other cases are cited. One was *Driggers v. United States*, 309 F.Supp. 1377 (D.C.1970), which was a law suit filed only four months after the accident, so could easily be properly pursued by compliance under 28 U.S.C. § 2675(a). There was also a secondary reference to *Steele v. United States*, 599 F.2d 823 (7th Cir. 1979), which has already been factually distinguished from the present case.

Although relying on *Lien, supra*, the *Flickenger* court discards the Second Cir-cuit's thorough treatment of the limitations dilemma in *Kelley Flickinger, supra*, at 1376. Furthermore, the court in *Flickenger* mentions that there was some evidence that plaintiff should have known the defendant was related to the government, simply because the defendant had been hired as a result of a community activity. That was not considered by the court, for they chose instead to follow *Lien* to find an absolute rejection of the claim. *Id.* at 1374. *See also United States v. LePatourel*, 593 F.2d 827 (8th Cir. 1979) (plaintiff knew the targeted defendant was a federal judge, but did not have to assume he was subject to the FTCA until judicial declaration of such). Plaintiff LePatourel was granted leave to file an administrative claim.

More helpful to this Court is the more recent treatment of this issue by the Eighth Circuit in *Wollman v. Gross*, 637 F.2d 544 (8th Cir. 1980), *cert. denied*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). Although declining to find an exception to the operation of § 2675(a), the court in *Wollman* pointed out that the defendant Gross never informed his superior of the accident, but merely turned it over to his private insurance carrier. Naturally the government was never presented with the opportunity to come forward as the proper party defendant, and should not then later be held accountable. Clearly that was neither the case in *Kelley*, nor is it the case as between Captain Adams and his employer.

Clearly it is now the responsibility of this Court to carefully review the present facts in light of the Second Circuit's disposition toward fairness to the injured plaintiff articulated in *Kelley*. It is clear under the facts of this case, unprecedented in this Circuit, that the plaintiff must be allowed

---

**3.** Courts in other circuits have inaccurately relied upon *Lien*, for not only is it impossible to discern whether the holding of *Lien* reflected this Court's understanding that plaintiff was or was not attempting to pursue a stale claim, but it is also inappropriate for those courts to discard principles of equitable estoppel, when *Lien* carefully distinguished cases where a "plaintiff is ignorant, until too late, of the fact that the allegedly negligent party is a govern-ment employee acting within the scope of his employment. *Lien supra* at 606 n.2, *citing Kelley, supra.*

Finally, the factual and procedural differences are difficult, if not impossible to compare with the incomplete background of *Lien* serving to hamper any court's attempt at utilizing that case as a basis for a consistent interpretation of the statutory mandate.

to maintain her action in federal court. If it were not for the irresponsible behavior of the defendant in withholding his military identity while ostensibly in the course of his military responsibilities, the plaintiff could have been in a position to fully comply with the administrative requisites of 28 U.S.C. § 2675(a).

Clearly the defendant has suffered no additional inconvenience in being asked to prepare for the defense of a claim that was instituted less than a year following the expiration of the standard two year period of limitations. *See United States v. LePatourel, supra,* (six years passed without prejudice to defendant). Surely the product of responsible legislators should not be diluted by recognition of varying state statutes of limitations in all cases, *see Steele v. United States, supra; but see United States v. LePatourel, supra,* 593 F.2d at 832, ("We have considered this problem and agree with the district court that the class of claimants similarly situated with the LePatourels cannot be so large as to threaten the interests protected by § 2401(b)."), yet this Court echoes the concerns of numerous judges faced with the basic unfairness of this statute when applied to genuinely ignorant plaintiffs, especially when that ignorance should have been eliminated by the responsible representation of government involvement. *See Wollman v. Gross, supra, reh'g denied en banc,* 646 F.2d 1306 (8th Cir. 1981). That dissent, in an equally divided vote, ably describes the concerns of this Court:

> The facts of this case amply demonstrate that a gross injustice has resulted from the court's rigid application of the statute of limitations under the Federal Tort Claims Act. As Judge Adams points out in his dissent to the panel opinion, Congress could not have intended the result now endorsed by four judges of this court. Wollman, injured in a car accident by Gross, diligently pursued his claim with Gross' insurer, which immediately reimbursed Wollman for damages to his car. Wollman then filed suit for his personal injuries well within the time of the three year state statute of limitations.

Neither Wollman nor Gross knew that Wollman's exclusive remedy was against the United States. Wollman was never informed that Gross was acting within the scope of his governmental duties at the time of the accident. Wollman was literally lulled into a sense of false security by Gross and his insurer who negotiated his claim with him, perhaps in good faith, for over two years.

Gross and his insurer, not Wollman, were the ones who slept on their rights. Gross and his insurer did not report the accident to the Government or deliver Wollman's claim to the Government as required by 28 U.S.C. § 2679(c) and 28 C.F.R. § 15.1. Wollman did not learn of the Government's interest in his suit until Gross filed an amended answer on February 21, 1979, asserting his status as a Government employee. . . .

. . . I raise one other question. It is the United States that has intervened in the state court, substituting itself in place of the individual employee. When it does so, at a date past the time of the statute of limitations, it seems that a realistic interpretation of subsections 2679(b) and (d) would require the Government to take the original suit as it finds it; the original suit should be deemed to have been initiated against the United States for purposes of determining whether it was brought within the proper statute of limitations. *Cf. Henderson v. United States,* 429 F.2d 588 (10th Cir. 1970); *Whistler v. United States,* 252 F.Supp. 913 (N.D.Ind. 1966). A party may waive the statute of limitations. In this regard the United States, although not subject to the doctrine of estoppel, should not be treated any differently from any other party. If the Government voluntarily chooses to stand in the shoes of another, it should assume all rights and liabilities existing. If the employee had failed to report the lawsuit to the governmental agency under 28 C.F.R. § 15.1 and the suit had proceeded to judgment against the employee individually, there would have been no recourse by the employee against

the Government. Under these circumstances the plaintiff could proceed for collection against the employee and his insurer. It is incongruous to hold that an employee who belatedly reports to the Government may totally prejudice an injured innocent party.

I do not attempt to resolve these questions. My concern is that this case presents a gross injustice and is much more deserving of an en banc consideration than many cases which somehow reach our en banc docket. In any event, assuming no judicial relief is forthcoming, the statute as presently construed cries out for legislative amendment to obviate continuing unfairness to unknowing tort victims of the Government.

(footnotes omitted).[4]

Generally speaking, "[s]tatutes of limitations are primarily designed to assure fairness to defendants." *Burnett v. New York Cent. R. R.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). "However, circumstances beyond a plaintiff's control may prevent him from suing within the applicable limitations period." Special Project, *Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations*, 65 Cornell L.Rev. 1011, 1084 (1980). In a footnote to that comment, the authors describe personal jurisdiction, incarceration, incompetence, estoppel and waiver, death of a party, and revival of the action either upon the making of a fresh promise to perform an agreement or upon part performance. *Id.* at 1084 n. 342. These tolling circumstances represent "a reordering in the importance of the underlying purposes of limitations periods." *Id.* at 1085. Courts have also recognized that suspension of the limitations period is sometimes necessary to preserve the rights of the plaintiff. Such is the case in fraudulent concealment actions addressed by the Supreme Court in *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874). "No remedial policies justify

barring an action when, as in *Bailey*, the defendant has prevented the plaintiff from bringing suit." 86 Cornell L.Rev. at 1019.

In light of the particular facts of this case, and the general observation that statutory limitations periods must not always be treated as inflexible, this Court recognizes the proper removal of this case, and hereby Orders that plaintiff's cross-motion to remand to state court is denied.

Furthermore, this Court hereby Orders that defendant's motion to dismiss is in all respects denied.

---

4. To say that this Court concurs, would not adequately communicate my view that the legislation as it is presently applied simply cannot fairly and equitably treat all tort victims. Clearly legislative amendment must avert strained and complicated judicial attempts to correct the obvious statutory inequities.