**David M. WOLLMAN, Plaintiff,**

v.

**Jake GROSS, Jr., Defendant.**

**Civ. 79–4031.**

United States District Court,
D. South Dakota, S. D.

Feb. 20, 1980.

N. Dean Nasser, Jr., Sioux Falls, S. D., for plaintiff.

Robert D. Hiaring, U. S. Atty., Sioux Falls, S. D., and Pamela L. Wood, Trial Attorney Torts Branch, Dept. of Justice, Washington, D. C., for defendant.

Timothy Nimick, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for insuror.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The case arises out of an automobile accident on June 11, 1976, between the plaintiff, David Wollman, and the named defendant, Jake Gross, Jr. The plaintiff and the defendant are lifelong neighbors who live about one and one-half miles apart near Freeman, South Dakota. On the date of the accident the defendant Gross was employed by the Agriculture Stabilization and Conservation Service (ASCS). He was the District Director for the ASCS State Office in charge of the supervision and review of programs for ten county offices within the state of South Dakota. It was for the purpose of checking the Davison County ASCS office in Mitchell, South Dakota, that the defendant left his home in his personal car on June 11, 1976. Mr. Gross' home was his assigned duty station and he received mileage reimbursement from the government for such trips. After finishing his work at the ASCS office in Mitchell he drove toward his home duty station by the most direct route without deviating for any personal business. The accident occurred around 4:00 p. m. on County Road 13 between the farmsteads of the plaintiff and the defendant.

Neither the plaintiff nor the defendant realized that defendant Gross was driving as a federal employee within the scope of his employment. Defendant Gross did not report the accident to his administrative office and his personal insurance company began dealing with the plaintiff. On January 25, 1979, more than two years after the accident, the plaintiff filed a complaint in state court naming Jake Gross, Jr., individually, as defendant. The involvement of the United States Government was first recognized by the counsel of the defendant's personal insuror somewhere in mid-February, 1979. The case was removed to federal court by the United States Attorney on March 23, 1979. On March 29, 1979, the United States filed a motion to dismiss for lack of jurisdiction due to the untimeliness of any administrative claim. The plaintiff then sent an administrative claim to the

United States Department of Agriculture dated July 16, 1979, and on July 18, 1979, filed with this court a motion to remand to state court. A hearing on the two pending motions was heard by this court on August 29, 1979.

There are two questions to be resolved to determine the outcome of the United States Government's motion to dismiss and the plaintiff's motion for remand:

(1) Whether Jake Gross, Jr., was a federal employee acting within the scope of his employment at the time of the accident, and

(2) Whether the Federal Tort Claim was presented within two years of the date of the claims accrual?

## I. MR. GROSS WAS A FEDERAL EMPLOYEE ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT AT THE TIME OF THE ACCIDENT.

■ Under the Federal Tort Claims Act, the United States District Courts have exclusive jurisdiction of tort actions where a federal employee involved in an accident is acting within the scope of his employment at the time of the collision. 28 U.S.C. section 2679(b). Determining who is an employee of the government for Federal Tort Claim purposes is a matter of federal law. *Pattno v. United States*, 311 F.2d 604 (10th Cir. 1962), *cert. den.* 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963). The term "employee of the government" is defined to include "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity . . . ." 28 U.S.C. section 2671. The critical element in determining when someone is a federal employee is the power of the federal government to control the detailed physical performance of his duties. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973); *Gere v. United States*, 425 F.Supp. 847, 850 (D.S.D. 1977).

The Agricultural Stabilization and Conservation Service is an agency of the United States established by the Secretary of Agriculture. The ASCS structure has been recognized as a "hierarchy of command" functioning as a government agency under the overriding authority and control of the Secretary of Agriculture and his appointees. *Duba v. Schuetzle*, 303 F.2d 570, 571 (8th Cir. 1962). Employees of the ASCS have consistently been recognized as federal employees under the Federal Tort Claims Act. *Duba v. Schuetzle*, 303 F.2d 570 (8th Cir. 1962); *Gross v. Sederstrom*, 429 F.2d 96, 98 (8th Cir. 1970); *Delgado v. Akins*, 236 F.Supp. 202 (D.Ariz.1964); *Myers v. Cromwell*, 267 F.Supp. 12 (D.Kan.1967). *Contra, Lavitt v. United States*, 177 F.2d 627 (2d Cir. 1949).

■ Jake Gross, Jr., was at the time of the accident and is now the District Director for the ASCS State Office. He is a full-time civil service employee who is paid by the federal government. He is an Agricultural Program Specialist in charge of the execution of agricultural programs and the supervision of county ASCS offices. He is under the supervision of the State Executive Director of the ASCS. This court finds that Jake Gross is controlled under the Secretary of Agriculture's hierarchy of command within the ASCS structure and is accordingly a government employee.

■ Unlike the determination of who is a federal employee according to federal law, this court is bound to apply state law in determining whether or not a federal employee's acts are within the scope of employment. *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Davies v. U. S.*, 542 F.2d 1361, 1362 (9th Cir. 1976). Although no case decided under South Dakota law is analogous to the facts of the present case, a number of general tenets have been either adopted or noted previously by the South Dakota courts.

In *Morman v. Wagner*, 63 S.D. 547, 262 N.W. 78, 79–80 (1935), it was determined that an act of an employee done for the benefit of the employer either directly or indirectly is within the general scope of a servant's employment, but an act done to

effect some independent purpose of the employee's is not within that scope. Several general principles were also noted in *Alberts v. Mutual Service Casualty Insurance Co.*, 80 S.D. 303, 123 N.W.2d 96, 98 (1963). The court first noted the general rule as set out in 57 C.J.S. Master and Servant § 570d(2):

> (C)onduct which the master has specifically directed is within the scope of the servant's employment, but it is not essential that the conduct be specially authorized by the master . . . (A)n act is within the scope of a servant's employment where it is reasonably necessary or appropriate to accomplish the purpose of his employment, and intended for that purpose although in excess of the powers actually conferred on the servant by the master.

*Alberts v. Mutual Service Casualty Insurance Co.*, 123 N.W.2d at 98. The court then pointed out section 228(1) of the American Law Institute Restatement, Agency 2d:

> Conduct of a servant is within the scope of employment if (a) it is of the kind he is employed to perform, (b) it occurs substantially within the authorized time and space limits; (c) it is actuated at least in part, by a purpose to serve the master.

*Alberts*, 123 N.W.2d at 98, and concluded from American Law Institute, Restatement, Agency 2d section 239 and other case authority that:

> The servant may also be within the scope of his employment in using an instrumentality not expressly authorized to effect a result which he has been ordered by the master to accomplish where the means are not specified . . . and no other means are available, . . . or if the means available are not in operating condition. . . . For, 'if the master directs a servant to accomplish a result and does not specify the means to be used, the servant is authorized to employ any usual or suitable means'.

*Alberts*, 123 N.W.2d at 99.

The plaintiff argues that Mr. Gross was an independent contractor in the use of his automobile even though he is normally an employee in other respects because the government did not have the right as a master to control the use of Mr. Gross' personal car at the time of the accident. The plaintiff relies on a line of cases where because the use of a personal car was permitted by the employer but not required or reasonably necessary to the performance of any business duties, the employee was found not to be within the scope of employment at the time of the automobile accident. *Daugherty v. United States*, 427 F.Supp. 222 (W.D.Pa.1977); *Tavolieri v. Allain*, 222 F.Supp. 756, 758–759 (D.Mass. 1963); *Murphy v. United States*, 113 F.Supp. 345, 346 (W.D.N.Y.1953); *Bissell v. McElligott*, 369 F.2d 115 (8th Cir. 1966), aff'g 248 F.Supp. 219 (W.D.Mo.1965), cert. den. 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967); *Manderacchi v. United States*, 264 F.Supp. 380 (D.Md.1967). But see, *Levin v. Taylor*, 150 U.S.App.D.C. 261, 464 F.2d 770 (D.C.Cir. 1972); *United States v. Farmer*, 400 F.2d 107 (8th Cir. 1968), aff'g 261 F.Supp. 750 (S.D.Iowa 1966). These cases find the use of a personal car to be merely permitted for the employee's convenience where such options as a bus, taxicab, trolley, passenger train, government vehicle, or walking were equally suitable alternatives.

Even assuming such a premise is the applicable law in South Dakota, these cases are not applicable to the facts of the present case. Mr. Gross' job required him to do a great deal of field travel between various county offices and his official duty station at his farmstead near Freeman, South Dakota. The use of his personal car can be considered reasonably necessary for such a business which required "that a majority of time" be directed to field travel in rural South Dakota where there are few available methods of public transportation. Furthermore, Mr. Gross' use of his personal car was not merely a matter of his personal convenience. The government reimbursed Mr. Gross for his mileage on such trips. An affidavit from Mr. Gross' supervisor finding the use of his vehicle in the scope of employment stated that "Mr. Gross was autho-

rized to use his private vehicle for transportation since no General Service Authority vehicles were available for him to use and any other suitable transportation would have resulted in a greater expense to the government." Mr. Gross' use of his personal car was not merely a personal decision of his own but an authorized government use for the convenience and benefit of the employer as well as a mode of transportation reasonably necessary to the employee's business duties.

■ The mere fact that Mr. Gross was allowed to select the precise time and routes he would travel does not make the employee an independent contractor in the use of his car where the act of driving his car is an act within the ordinary scope and course of employment. *Standard Oil Co. v. Parkinson,* 152 F. 681, 683–4 (8th Cir. 1907). The authority to select when and what routes to travel can be implied as "usual, customary, and necessary to fulfill the duty intrusted to him by the master." *Alberts,* 123 N.W.2d at 98.

■ This court concludes that Mr. Gross' accident occurred in the transaction of business for the ASCS. He was traveling for the sole purpose of serving government business; he was traveling on the most direct route between the county ASCS office in Mitchell, South Dakota, and his assigned duty station in Freeman; he was using an expressly authorized means of transportation; he was driving during regular working hours, and he was being paid his regular salary plus mileage at the time of the accident. Mr. Gross was acting within the scope of his employment for the ASCS at the time of the accident. This result is consistent with South Dakota law on scope of employment previously noted.

## II. THE PLAINTIFF'S CLAIM IS UNTIMELY.

As the defendant named was a federal employee acting within the scope of his employment at the time of the automobile accident, the plaintiff's exclusive remedy is against the United States under the Federal Tort Claims Act. 28 U.S.C. section 2679(b). Section 2675(a) of the Federal Tort Claims Act requires as a jurisdictional prerequisite that any claim must first be presented to the appropriate administrative agency and denied. This administrative claim must be presented "to the appropriate federal agency within two years after such claim accrues". 28 U.S.C. section 2401(b); *Meeker v. United States,* 435 F.2d 1219 (8th Cir. 1970); *West v. United States,* 592 F.2d 487, 492 (8th Cir. 1979).

■ The plaintiff's administrative claim was filed with the Department of Agriculture more than two years after the accident occurred. The plaintiff argues, however, in this action that the time of accrual should not be the date of the accident and injury but the date he first discovered that the defendant was acting as a federal employee on federal business at the time of the accident. Determining when a particular federal tort claim accrues is a matter of federal law which must be determined by the court in light of the surrounding circumstances. *United States v. LePatourel,* 593 F.2d 827, 830 (8th Cir. 1979); *Steele v. United States,* 599 F.2d 823, 826 (7th Cir. 1979).

The general rule under the Act has been that a tort claim for personal injury or property damage resulting from the negligent operation of a motor vehicle by a government employee accrues at the time of the injury "when the injury coincides with the negligent act and some damage is discernible at that time." *Steele v. United States,* 599 F.2d 823, 828 (7th Cir. 1979); *Mendiola v. United States,* 401 F.2d 695, 697 (5th Cir. 1968). However, the courts have recognized that there are circumstances when a claim accrues at a later time. For example, in medical malpractice actions where the injury and the cause are not immediately known and actions where new law applied retroactively has created a new basis for a claim, the time of accrual has been postponed. *Neely v. United States,* 546 F.2d 1059, 1069 (3rd Cir. 1976); *United States v. LePatourel,* 593 F.2d 827, 830 (8th Cir. 1979); *United States v. Kubrick,* ——

U.S. ——, ——, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979). In these types of cases it is stated that a claim accrues against the government under the Act when the plaintiff discovers or in the exercise of reasonable diligence should have discovered the essential elements of his possible cause of action. *Bridgford v. United States*, 550 F.2d 978, 981–82 (4th Cir. 1977); *Quinton v. United States*, 304 F.2d 234, 240 (5th Cir. 1962).

There is no basis, however, for a categorical exception to rule 2401(b) where the plaintiff is not at the outset aware of the defendant's employment status. And under the circumstances of this case, this court does not find it justified to extend the accrual date when the plaintiff knew all the essential facts of the case except the fact that the government was vicariously liable under the Federal Tort Claims Act for Mr. Gross' allegedly negligent actions.

Similar results have been reached in other cases. In *West v. United States*, 592 F.2d 487, 492 (8th Cir. 1979), the accrual date of a medical malpractice claim was determined to be the date upon which the plaintiffs learned of the injury and its cause and not the date when the status of the doctor as a federal employee acting within the scope of employment was discovered. As any administrative claim would be untimely, the case was totally barred. In *Baker v. United States*, 341 F.Supp. 494 (D.Md.1972), neither the plaintiff nor anyone else connected with the matter including the employee and representatives of his insurance company realized that at the time of the accident the employee was acting within the scope of federal employment. Upon discovery of such information more than two years after the accident, the case was removed to federal court and dismissed. In *Steele v. United States*, 599 F.2d 823 (7th Cir. 1979), the tort claim against the Federal Aviation Administration was found to accrue at the time of the injury even though the plaintiff was unaware at that time that an agency of the United States was the party allegedly negligent in failing to warn of the remote power switch which caused the electrical shock to the plaintiff.

This case was also dismissed for failure to file a timely administrative claim. In *Lien v. Beehner*, 453 F.Supp. 604 (N.D.N.Y.1978), the court refused to toll the two year limitation period running from the time of the injury and damage solely because the government employment of the defendants was shielded from both the plaintiff and the public. The court in *Driggers v. United States*, 309 F.Supp. 1377, 1379 (D.S.C.1970), also rejected the contention that an administrative claim is not required to be filed within two years from the date of the accident because the status of the defendant as a government employee acting in the course of his employment was not clearly known to the plaintiff.

■ This is not a case where the government is found to have "lull(ed) plaintiffs into a false sense of security" by deliberately waiting until two years after an accident before substituting the United States as a party for the individual employee and then removing the state case to federal court and seeking dismissal. *E. g., Kelley v. United States*, 568 F.2d 259 (2d Cir. 1978), *cert. den.* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124; *West v. United States*, 592 F.2d 487, 493 (8th Cir. 1979). In the present case no action was commenced by the plaintiff until after two years from the time of the accident. Nor can the government's or its employee's silence before the commencement of suit or the filing of an administrative claim be seen to estop the two year limitation period or affect the accrual date. There is no assertion of any active or deliberate concealment and the plaintiff has acknowledged that he knew Mr. Gross was employed by the ASCS. In 1974 Mr. Gross had aided his neighbor, Mr. Wollman, in obtaining a job as a part-time crop appraiser with the State ASCS. Furthermore, the limitation period of section 2401(b) is jurisdictional and not subject to estoppel. *Best Bearings Co. v. United States*, 463 F.2d 1177 (7th Cir. 1972); *Lien v. Beehner*, 453 F.Supp. 604, 606 (N.D.N.Y. 1978).

The application of the two year statute of limitations under the Federal Tort Claims Act may result in hardship to plaintiffs in those cases where meritorious claims are barred. Nevertheless, it must also be remembered that the statutes are designed to protect defendants from bearing the burden of defending against stale claims. As recently stated by the United States Supreme Court, "Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. We should regard the plea of limitations as a 'meritorious defense', in itself serving a public interest." *United States v. Kubrick,* —— U.S. ——, ——, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979).

Accordingly, the plaintiff's motion to remand this case to state court is denied and the motion of the United States for dismissal is granted. Counsel for the United States is directed to prepare an order in accordance with this opinion.