**David M. WOLLMAN, Appellant,**

v.

**Jake GROSS, Jr., Appellee.**

No. 80–1204.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1980.
Decided Dec. 31, 1980.

N. Dean Nasser, Jr., Sioux Falls, S. D., for appellant.

Pamela L. Wood, Civil Division, Dept. of Justice, Washington, D. C., for appellee.

Before HEANEY, ADAMS,* and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This case arises from an automobile accident between plaintiff-appellant David Wollman and defendant-appellee Jake

---

* The Honorable Arlin M. Adams, United States Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

Gross, Jr. The case was removed to federal district court[1] from South Dakota state court on petition by the United States Attorney contending that the United States was the proper defendant under the Federal Tort Claims Act (FTCA) because Gross was a federal employee acting within the scope of his employment. After a hearing the district court refused to grant Wollman's motion for a remand to state court, determining that Gross was a federal employee acting within the scope of his employment at the time of the accident. The district court then dismissed the suit because an administrative claim had not been presented within two years of the date of the accrual of the claim as required by the FTCA. We affirm.

The district court opinion presents a good summary of the facts underlying this case:

The case arises out of an automobile accident on June 11, 1976, between the plaintiff, David Wollman, and the named defendant, Jake Gross, Jr. The plaintiff and the defendant are lifelong neighbors who live about one and one-half miles apart near Freeman, South Dakota. On the date of the accident the defendant Gross was employed by the Agriculture Stabilization and Conservation Service (ASCS). He was the District Director for the ASCS State Office in charge of the supervision and review of programs for ten county offices within the state of South Dakota. It was for the purpose of checking the Davison County ASCS office in Mitchell, South Dakota, that the defendant left his home in his personal car on June 11, 1976. Mr. Gross' home was his assigned duty station and he received mileage reimbursement from the government for such trips. After finishing his work at the ASCS office in Mitchell he drove toward his home duty station by the most direct route without deviating for any personal business. The accident occurred around 4:00 p. m. on County Road 13 between the farmsteads of the plaintiff and the defendant.

Neither the plaintiff nor the defendant realized that defendant Gross was driving as a federal employee within the scope of his employment. Defendant Gross did not report the accident to his administrative office and his personal insurance company began dealing with the plaintiff. On January 25, 1979, more than two years after the accident, the plaintiff filed a complaint in state court naming Jake Gross, Jr., individually, as defendant. The involvement of the United States Government was first recognized by the counsel of the defendant's personal insuror somewhere in mid-February, 1979. The case was removed to federal court by the United States Attorney on March 23, 1979. On March 29, 1979, the United States filed a motion to dismiss for lack of jurisdiction due to the untimeliness of any administrative claim. The plaintiff then sent an administrative claim to the United States Department of Agriculture dated July 16, 1979, and on July 18, 1979, filed with this court a motion to remand to state court.

*Wollman v. Gross*, 484 F.Supp. 598, 600–01 (D.S.D.1980).

On appeal Wollman contends the district court erred in determining that: (1) Gross was a federal employee; (2) Gross was acting within the scope of his federal employment at the time of the accident; (3) a Federal Tort Claim was not filed within two years from the time the cause of action accrued; and (4) this case did not fall within the rationale of *United States v. LePatourel*, 593 F.2d 827 (8th Cir. 1979), requiring a postponement of the accrual date of the claim.

■ We are in agreement with the district court that Gross was a federal employee acting within the scope of his employment at the time of the accident. After a careful consideration of the record and briefs and arguments of the parties concerning this issue, this court has concluded

1. The Honorable Fred J. Nichol, Senior District Judge (then Chief Judge) of the United States District Court for the District of South Dakota.

that the decision of the district court is based on findings that are not clearly erroneous and that no error of law appears. The district court's decision on these issues is therefore affirmed on the basis of the court's well-reasoned opinion. *See Wollman v. Gross, supra*, 484 F.Supp. at 601–03. It is noted that while the question of scope of employment is one of state law for which there have been no analogous cases cited under South Dakota law, great weight is given to the local district court's view of state law. *See, e. g., Duke v. Hartford Fire Insurance Co.*, 617 F.2d 509, 510 (8th Cir. 1980); *Foremost Insurance Co. v. Sheppard*, 610 F.2d 551, 554 (8th Cir. 1979). Wollman has not shown that the district court's determination that Gross was acting within the scope of his employment to be in any way inconsistent with the law of South Dakota.

We also agree with the district court that the filing of the administrative claim was untimely and therefore the claim was properly dismissed. Because of the harshness of this result to Wollman, however, further comment is appropriate.

█ The district court properly held that because Gross was a federal employee acting within the scope of his employment, plaintiff's exclusive remedy is against the United States under the FTCA. 28 U.S.C. § 2679(b). The FTCA waives the sovereignty of the United States, and the courts in construing the statute of limitations, which is a condition of that waiver, should not extend the waiver beyond that which Congress intended. *United States v. Kubrick*, 444 U.S. 111, 117–19, 100 S.Ct. 352, 356–58, 62 L.Ed.2d 259 (1979). Nor, however, should the courts assume the authority to narrow the waiver. *Id.* Prior to bringing a suit a claim must be presented in writing to the appropriate administrative agency "within two years after such claim accrues." 28 U.S.C. §§ 2401(b); 2675(a).

█ Wollman's administrative claim was filed more than two years after the accident occurred, but Wollman argues the accrual date should not be the date of the accident, June 11, 1976, but instead the date Wollman discovered facts which put him on notice that Gross may have been a federal employee acting within the scope of his employment. Wollman contends this latter date is approximately February 22, 1979, when plaintiff received defendant's amended answer alleging he was an employee of the federal government. Wollman argues he had been diligent in bringing this law suit within the state three-year statute of limitations. The state suit was filed more than two years but less than three years after the accident.

The district court stated the current status of the law concerning the accrual of a federal tort claim.

The general rule under the Act has been that a tort claim for personal injury or property damage resulting from the negligent operation of a motor vehicle by a government employee accrues at the time of the injury "when the injury coincides with the negligent act and some damage is discernible at that time." *Steele v. United States*, 599 F.2d 823, 828 (7th Cir. 1979); *Mendiola v. United States*, 401 F.2d 695, 697 (5th Cir. 1968). However, the courts have recognized that there are circumstances when a claim accrues at a later time. For example, in medical malpractice actions where the injury and the cause are not immediately known and actions where new law applied retroactively has created a new basis for a claim, the time of accrual has been postponed. *Neely v. United States*, 546 F.2d 1059, 1069 (3rd Cir. 1976); *United States v. LePatourel*, 593 F.2d 827, 830 (8th Cir. 1979); *United States v. Kubrick*, [444 U.S. 111, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979)].

*Wollman v. Gross, supra*, 484 F.Supp. at 603–04.

Wollman argues the time for accrual of the claim should be extended on the basis of both (1) the doctrine of "blameless ignorance,"[2] and (2) the rationale of *United States v. LePatourel, supra*.

2. *See* note 4 and accompanying text *infra*.

*LePatourel* does not control this situation. In that case, this court ruled for the first time that federal judges were federal employees for purposes of the FTCA. The court *en banc* then held that this ruling was a "novel question of federal law" which would not be applied retroactively, and therefore the claim did not accrue until this court's declaration that federal judges were federal employees under the FTCA. 593 F.2d at 831–32. It is our view that the judicial determination that Gross was a federal employee acting within the scope of his employment presents no "novel question of law." Further, there is no basis for extending *LePatourel* to "novel questions of fact" as suggested by Wollman.[3]

Wollman also contends the doctrine of "blameless ignorance" should apply in this case. This doctrine was enunciated by the Supreme Court in *Urie v. Thompson*, 337 U.S. 163, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949) and applied to FTCA cases in *Quinton v. United States*, 304 F.2d 234 (5th Cir. 1962). Its primary application has been in medical malpractice cases.[4]

It is our view that *United States v. Kubrick, supra*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) limits this doctrine and forecloses Wollman's argument in this case that the accrual date should be extended to the point in time that Wollman became aware of the status of Gross as a federal employee.

*Kubrick* involved a medical malpractice claim where plaintiff had suffered a hearing loss after taking neomycin in 1968. In January 1969, plaintiff was informed by a private physician that neomycin may have caused the hearing loss. Another physician, in 1971, stated that neomycin was the cause of the injury and such treatment should not have been administered. Suit was brought in 1972. The Supreme Court held that the claim accrued in 1969, when plaintiff knew of the existence and cause of his injury and not in 1971, when he also learned that the acts inflicting the injury may constitute medical malpractice. The Court stated:

> The District Court, 435 F.Supp., at 185, and apparently the Court of Appeals, thought its ruling justified because of the "technical complexity," 581 F.2d, at 1097, of the negligence question in this case. But determining negligence or not is often complicated and hotly disputed, so much so that judge or jury must decide the issue after listening to a barrage of conflicting expert testimony. And if in this complicated malpractice case, the statute is not to run until the plaintiff is led to suspect negligence, it would be difficult indeed not to apply the same accrual rule to medical and health claims arising under other statutes and to a whole range of other negligence cases arising under the Act and other federal statutes, where the legal implications or complicated facts make it unreasonable to expect the injured plaintiff, who does not seek legal or other appropriate advice, to realize that his legal rights may have been invaded.

*United States v. Kubrick, supra*, 444 U.S. at 124, 100 S.Ct. at 360.

Even if the doctrine of "blameless ignorance" extends beyond the medical mal-

---

3. Wollman also argues *Neely v. United States*, 546 F.2d 1059 (3d Cir. 1976) establishes that the accrual of a cause of action should be postponed if the claim was "inherently unknowable" at accrual. That case postponed the accrual on the basis of an "inherently unknowable" proposition of law, that being the express overruling of authoritative precedents by the United States Supreme Court. There is no similar "inherently unknowable" question of law involved in the instant action.

4. This circuit approved of *Quinton* in *Reilly v. United States*, 513 F.2d 147 (8th Cir. 1975). *Urie* and *Quinton* were relied on by some courts, *e. g.*, *DeWitt v. United States*, 593 F.2d

276 (7th Cir. 1979); *Exnicious v. United States*, 563 F.2d 418, 420, 424 (10th Cir. 1977); *Bridgford v. United States*, 550 F.2d 978, 981–82 (4th Cir. 1977); and *Jordan v. United States*, 503 F.2d 620 (6th Cir. 1974), which held or indicated in dictum that a malpractice plaintiff under federal law must be aware of the legal implications of the facts, as well as the facts themselves, before the limitations period began to run. The Supreme Court in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) disagreed and held the cause of action accrues when plaintiff knows of both the existence and cause of the injury.

practice area, a proposition we do not address, *Kubrick* prohibits the postponement of the accrual date in the instant action. Wollman was aware at the time of the accident that Gross was employed by the ASCS. He was unaware only of the legal significance of this fact. The purpose of the statute of limitations is to require the reasonably diligent presentation of tort claims. This may require a plaintiff to obtain appropriate legal counsel and together with counsel discover the facts and their possible legal ramifications so as to enable plaintiff to bring the suit within a reasonable time. As stated by the Court in *Kubrick,*

> A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*Id.* at 123, 100 S.Ct. at 360.

Admittedly this application of the statute of limitations has especially harsh ramifications here where the record indicates little prejudice to the government if it had to defend this lawsuit. However, to accept Wollman's argument would be in effect rewriting the two-year statute of limitations of 28 U.S.C. § 2401(b) to allow the state statute of limitations to apply whenever plaintiff is unaware of the status of the defendant as a federal employee acting within the scope of his employment. While this may be desirable, Congress has clearly not chosen to do this and any change is its prerogative and not that of the courts.

Wollman also relies heavily on *Kelley v. United States,* 568 F.2d 259 (2d Cir.), *cert. denied,* 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978). It is far from clear that *Kelley* is good law in this circuit,[5] but in any event that case is distinguishable from the case at bar.

In *Kelley* the state suit against the individual had been instituted within the two-year period of 28 U.S.C. § 2401(b) but after the two-year period expired the government moved for removal, to be substituted as the party in interest, and for dismissal for failure to file the administrative claim within two years. The district court found in that case that the government had "lull[ed] plaintiffs into a false sense of security by waiting until plaintiffs' time to file an administrative claim had expired and thereupon moved to be substituted and to dismiss." *Kelley v. United States, supra* 568 F.2d at 262. The Second Circuit affirmed, characterizing the case as one of "innocent ignorance or ingenuous blunder." *Id.*[6]

The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it. *DeWitt v. United States,* 593 F.2d 276, 281 (7th Cir. 1979). Here the state action was not commenced until after the two-year statute of limitations of 28 U.S.C. § 2401(b) had expired. Wollman has not alleged, nor has a careful examination of the record revealed, activities of the defendant or the United States which would lull the plaintiff into a false sense of security. The most that can be said is that Gross turned the matter over to his private insurer and did not file an administrative report with his superior as he should have.

---

**5.** *Kelley* expressly distinguishes and rejects much of the reasoning of *Meeker v. United States,* 435 F.2d 1219 (8th Cir. 1970). *Meeker,* which has never been rejected by this circuit, holds that the FTCA's requirement of filing an administrative claim before bringing suit against the United States cannot be circumvented or satisfied by filing an action in state court against the governmental employee. In *Meeker,* this court held the suit had been prop-

erly dismissed for the failure to file the administrative claim required by 28 U.S.C. § 2675(a).

**6.** We also have some question as to whether Wollman was in fact "blamelessly ignorant." It does not seem unreasonable to expect Wollman, who was aware that Gross was an ASCS employee, to so inform his counsel, or for counsel to then research the status of ASCS employees for consideration of an FTCA claim.

Wollman never presented a claim to Gross' insurer until November 29, 1978, after more than two years had elapsed. The insurance company then denied liability by a letter dated January 4, 1979. Suit was brought in state court on January 29, 1979. The evidence then indicates that sometime between February 16, 1979, and February 21, 1979, Gross mentioned to his insurer's attorney that he worked for the ASCS. An amended answer alleging this fact was filed February 21, 1979, and the petition for removal was filed by the United States Attorney on March 23, 1979. Under these circumstances, we cannot say the actions of either Gross or the United States lulled plaintiff into a false sense of security as occurred in *Kelley.*

In addition to *United States v. Kubrick, supra,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259, the cases cited by the district court, 484 F.Supp. at 604, support our conclusion. *See West v. United States,* 592 F.2d 487 (8th Cir. 1979); *Steele v. United States,* 599 F.2d 823 (7th Cir. 1979); *Lien v. Beehner,* 453 F.Supp. 604 (N.D.N.Y.1978); *Baker v. United States,* 341 F.Supp. 494 (D.Md.), *aff'd,* (4th Cir. 1972); *Driggers v. United States,* 309 F.Supp. 1377 (D.S.C. 1970). *See also McGowan v. Williams,* 481 F.Supp. 681 (N.D.Ill.1979); *Reiser v. Di Pietro,* 78 F.R.D. 541 (N.D.Ill.1978); *Fuller v. Daniel,* 438 F.Supp. 928 (N.D.Ala.1977); *Miller v. United States,* 418 F.Supp. 373, 377 (D.Minn.1976).

Accordingly, the district court's order denying a remand of the case to state court and granting the United States' motion for dismissal is affirmed.

ADAMS, Circuit Judge, dissenting.

With full deference to my distinguished colleagues, I respectfully dissent. I do so because I am concerned that once again the law, in hewing rigorously to the written word, may have destroyed its larger spirit and left a harmed and innocent citizen completely remediless.[1]

## I.

In most respects, I agree with the opinion of the court. The district court's findings that Gross (1) was a federal employee and (2) was acting within the scope of his federal employment were not clearly erroneous. And it cannot be denied that Wollman's filing of an administrative claim was more than two years after the occurrence of the accident. Nevertheless, in focusing literally on the two-year statute of limitations, the majority appears to have sacrificed two central purposes of the Federal Tort Claims Act (FTCA)—protecting federal employees from the burden of tort claims, and providing the injured public with some recompense. I do not believe the FTCA should be subjected to such a unidimensional reading in which its varying objectives are subordinated to the assertedly paramount goal of preserving the sovereign from stale claims.

What we have before us is an injured plaintiff who for two years diligently sought to settle his claims with defendant's private insurer. Wollman was immediately reimbursed by the insurer for damages to his car. Gross and his insurer fully acquiesced in the avenue of recovery that plaintiff had pursued. At no point did they indicate in any way that Wollman should be dealing with someone other than themselves. The defendant never reported the accident to his employer and never treated the matter as though it were a job-related casualty. Because the defendant willingly participated in a private resolution of the claims, it appears anomalous that he should benefit from belatedly placing the matter in a governmental perspective. Surely, if the legislative history to the 1966 amendment of sections 2675 and 2401 governing

---

1. O just but severe law! ...
   No ceremony that to great ones (be)'longs,
   Not the King's crown, nor the deputed sword,
   The marshal's truncheon, nor the judge's robe,
   Become them with one half so good a grace
   As mercy does.

   If he had been as you, and you as he,
   You would have slipp'd like him; but he, like you
   Would not have been so stern.
   Measure for Measure
   Act II Sc. 2

federal tort claims contemplated that the administrative filing requirement had "the common purpose of providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved with litigation with their Government,"[2] it cannot have intended the result reached by the majority.

## II.

I fully realize that Wollman filed his administrative claim more than two years after the discovery of his injury. But "when a particular claim accrues within the meaning of the FTCA is a question of federal law which must be determined by the court in light of the surrounding circumstances." *United States v. LePatourel*, 593 F.2d 827, 830 (8th Cir. 1979); *Steele v. United States*, 599 F.2d 823, 826 (7th Cir. 1979) (noting unanimity among all courts of appeals except for the First Circuit on this issue). As the *Kubrick* decision itself declares, while the 1966 amendments to the Act indicated that the time of filing the administrative claim was the critical date for limitations purposes, the legislative reports do not further explicate when a tort claim "accrues" within the meaning of 28 U.S.C. § 2401(b). *United States v. Kubrick*, 444 U.S. 111, 119 n.6, 100 S.Ct. 352, 358 n.6, 62 L.Ed.2d 259. Thus, to say that a claim accrues upon discovery does not resolve the legal difficulties, for what should be discovered remains to be ascertained.

Prior to *Kubrick*, several circuits had held, generally in a malpractice context, that a plaintiff's claim does not accrue until he has a reasonable opportunity to discover all of the essential elements of a possible cause of action—duty, breach, causation and damages. *Stoleson v. United States*, 629 F.2d 1265 (7th Cir. 1980); *United States v. Kubrick, supra*, 444 U.S. at 120 n.7, 100 S.Ct. at 358 n.7 (citing cases). *Kubrick*, however, carefully sought to limit this range of elements to the essential facts of "injury" and "cause" which, once known, would trigger accrual of a claim. Yet precisely because there is a discrepancy between the facts known to Kubrick and those available to Wollman, I find that *Kubrick* is not controlling here.

In *Kubrick* the issue was "whether the claim 'accrues' within the meaning of the Act when the plaintiff knows both the existence and the cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." 444 U.S. at 113, 100 S.Ct. at 355. To put it another way, the Supreme Court appears to have proceeded on the assumption that Kubrick knew the facts and cause of his injury. What Kubrick did not know were the legal implications of his injury—that it had been negligently inflicted and that a legal duty to him had been breached by the Veterans Administration. In holding that "a plaintiff's ignorance of his legal rights" and "his ignorance of the fact of his injury or its cause" are not identical for statute of limitations purposes, the Supreme Court was in essence penalizing Kubrick for his failure to seek professional advice, and encouraging future litigants to consult with competent counsel. As the Court explained, "A plaintiff such as Kubrick, armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government." 444 U.S. at 123, 100 S.Ct. at 360.[3]

Wollman, quite significantly, did not know a critical fact of his injury. He knew of course that he had been hurt, but he did not know the status of Gross at the time of

**2.** S.Rep. No. 1327, 98th Cong. 2nd Sess., *reprinted in* [1966] U.S.Code Cong. and Ad.News, pp. 2515–16.

**3.** The Court is even more emphatic in a footnote which remarks: "Although he [Kubrick] diligently ascertained the cause of his injury, he sought no advice within two years thereafter as to whether he had been legally wronged. The dissent would excuse the omission. For statute of limitations purposes, we would not." 444 U.S. at 123 n.10, 100 S.Ct. at 360 n.10.

the injury. Indeed, Gross had created the clear impression that at the time of the accident he was acting in his private capacity. Gross' private insurer reimbursed Wollman for damages to his car and corresponded with Wollman and his lawyer for two years in an attempt to settle his claims for back injuries. In contradistinction, Kubrick knew that "it was highly possible that the hearing loss was the result of the neomycin treatment administered at the [VA] hospital," 444 U.S. at 114, 100 S.Ct. at 355, and he even applied to the Veterans Administration for an increase in disability benefits.[4] Wollman, however, had no idea that he should be complaining to a federal agency rather than bringing claims against the party with whom he had collided. Because no one believed that the accident had occurred within the scope of Gross' employment, Wollman can hardly be faulted for not deducing the proper legal course from his admitted knowledge of his neighbor's occupation. Wollman did not fail for want of legal advice to draw an acceptable legal conclusion from the relevant facts; rather no one considered the scope of Gross' employment as an existing or salient fact.

As the district court found, Gross did not report the accident to his supervisor and did not, when he was finally sued, deliver the process served upon him to whomever his head of department had designated to receive such papers, as 28 U.S.C. § 2679(c) and 28 C.F.R. § 15.1 require. Gross' insurer retained counsel to defend the original state court suit, and although the first answer denied the main allegations of the complaint there was no reference to federal employment nor recourse to the defense afforded by section 2679(b) to federal drivers whose accidents occur when they are acting within the scope of their employment. The consequence of these extended private negotiations which culminated in a suit that was timely for purposes of the state statute of limitations was that none of the papers in the lawsuit was sent to the U.S. Attorney, the Attorney General or the head of Gross' employing agency, as envisaged by section 2679(c) and 28 C.F.R. § 15.1, until the filing of Gross' second amended answer on February 21, 1979. Thus, Wollman only discovered the dispositive identity of the person who caused his injury—for purposes of the FTCA—more than two years after the fact of injury. Whether the claim is deemed to have accrued when Gross asserted, in his answer, his status as a government employee or when Wollman learned of the certification by the U.S. Attorney is unnecessary for us to decide, inasmuch as both occurred within two years of the filing of Wollman's administrative claim on July 16, 1979.

The factual context present here, in which neither the plaintiff nor the defendant regarded the defendant as a federal employee at the time of the accident, is analogous to the situation in *Kelley v. United States*, 568 F.2d 259 (2d Cir. 1978). There the Second Circuit found that mutual ignorance of the fact that the defendant was a federal driver operating within the scope of his employment was no basis for visiting harsh statute of limitations consequences on a plaintiff. As that court noted,

[t]he case exemplifies a sub-class of Federal Tort Claims Act cases, a sub-class which draws to it no reprobation and invites no special rigor of treatment. It is, simply, one of the not uncommon cases in which a driver of a motor vehicle who is a federal employee is sued individually because the plaintiff did not know that defendant was a federal employee, or did not understand that the employee was on federal business at the time of the accident. The instances in this sub-class of

---

4. As the Supreme Court was careful to note, "the VA Board of Appeals' reconsideration of Kubrick's case in 1975 entitled him to an increase in his disability rating as a result of the use of neomycin." *United States v. Kubrick*, 444 U.S. at 116 n.5, 100 S.Ct. at 356 n.5. Kubrick, who received more than $50,000 in augmented disability benefits, was surely not remediless.

cases are characterized by innocent ignorance or ingenuous blunder. There is nothing here to be discouraged or visited with disaster.

*Id.* at 262. The same sort of blameless ignorance of the identity aspect of the causal element, which should postpone accrual of a claim, is present in the case at hand.[5] And it is more appropriate to characterize such a state of affairs as reflecting ignorance of a crucial fact, rather than doubt about whether a legal duty to one had been breached. Because Wollman was unaware of a critical factual predicate of his claim, and not simply unaware that the defendant's actions might constitute actionable negligence, the case would appear to be distinguishable from *Kubrick*. *See* 444 U.S. at 121 n.8, 100 S.Ct. at 359 n.8.

## III.

Further, and perhaps more important for purposes of differentiating this case from *Kubrick*, Wollman diligently pursued his claims. While the reasoning in the *Kubrick* opinion is justified insofar as it is invoked against those who sleep on their rights, the very opposite behavior occurred here. Wollman was not oblivious to the legal implications of his complaints. He believed he had suffered a legal wrong, he sought legal advice, and his counsel and Gross' insurer continuously strove to resolve outstanding issues of negligence and liability. Wollman eventually filed suit well within what he understood to be the applicable limitations period—the three years designated by the state. Therefore, a postponement of the accrual date of Wollman's claim would not frustrate the purpose of the federal statute: requiring a reasonably diligent presentation of tort claims.[6]

Nor is the spectre raised in *Kubrick* —that a plaintiff could bring a claim at any conceivable future date so long as it was "within two years from the time he receives or perhaps forms for himself a reasonable

---

**5.** This court has rejected the reasoning in *Kelley* to the extent that it relies upon the third-party practice exception of 28 U.S.C. § 2675(a) to support its holding that the plaintiff's action, commenced against the individual employee within two years, could be maintained against the United States as substituted defendant even though no timely administrative claim had been made. *See West v. United States*, 592 F.2d 487, 491 n.3 (8th Cir. 1978). *Kelley* itself noted that *Meeker v. United States*, 435 F.2d 1219 (8th Cir. 1970), rejected "the contention that suits commenced as suits against Government employees are not within Section 2675's requirement that a claim first be filed with the interested federal agency." 568 F.2d 259 at 267. Yet, *Meeker* and *West* do not present a situation that parallels exactly the one before us here. *Meeker* involved a collision with a United States Post Office vehicle—government ownership and control were patently obvious. Moreover counsel conceded that should the matter proceed to trial, he expected to recover from the United States Government. 435 F.2d 1219, 1220–21 & nn.1, 4. The identity of the tortfeasor was clearly not an undiscovered fact. Similarly, in *West*, the parents of the injured child learned before the two-year statutory period for filing an administrative claim had expired that the allegedly negligent doctor was a governmental employee and that the U.S. Attorney was appearing on his behalf. *West v. United States*, 592 F.2d 487 (8th Cir. 1979).

**6.** For the same reason this case cannot be equated with *Steele v. United States*, 599 F.2d 823 (7th Cir. 1979), in which the plaintiff commenced his suit against the government without first filing an administrative claim with the appropriate agency. The court discredited Steele's claim about his inability to discover the government's involvement as conveniently designed to make his tardy administrative claim appear timely:

> The bar to the plaintiff's action appears not so much the result of the accrual of his cause of action when he suffered the injury, as his waiting until the last minute to take action and his confusion about the proper means of commencing a tort claim against the United States. The two-year limitations period was intended to afford those injured by torts committed by agents of the government a reasonable time to discover the facts, seek legal advice, and prepare their claims. The reasonable inference to be drawn from the history of the plaintiff's claim is that he did not use this time diligently.

599 F.2d at 829. Wollman, to the contrary, was exceedingly diligent.

opinion that he has been wronged"[7]—transferable to the present context. An injured plaintiff pursuing the operator of a motor vehicle as an individual would still have to commence suit within the state statute of limitations which for such torts is at most three years.[8]

The ruling by the majority produces an even more paradoxical result: plaintiffs in states with two-year statutes of limitations who are ignorant of the status of the tortfeasor will generally have occasion to repair the deficiency and file a timely administrative claim; in states with three-year statutes of limitations a diligent plaintiff like Wollman, who brings suit after two years but well within three years, will be absolutely barred from redirecting his claim to the appropriate federal agency. Yet as the Report to the 1949 amendment of the original one-year limitations period of the Act indicates, one of the reasons for extending the limitations period to two years was to bring the Act more in line with limitations periods for state tort actions. *See Kubrick,* 444 U.S. at 119 n.6, 100 S.Ct. at 358 n.6, citing H.R.Rep. No. 276, 81st Cong., 1st Sess., 1 (1949).[9] Jurisdictions like South Dakota, which sought to provide added protection to their citizens with three-year statutes of limitations may have instead created a system which leaves injured persons remediless, if the majority's view of the FTCA is adopted.

Precisely because the judgment which the Supreme Court sought to impose on Kubrick—namely, the determination whether to sue or not within the period of limitations—would occur in any event within three years in the present context, the underlying rationale in *Kubrick* of protecting the government from stale claims is dissipated. *Kubrick* understandably was concerned with guarding "defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." 444 U.S. at 111, 100 S.Ct. at 352. But this purpose would not be subverted by permitting Wollman's claim to proceed, on the basis that it did not accrue until he was apprised of the governmental identity of the person who caused the injuries, and yet was, as a private action, properly filed within the state statute of limitations. The evidence remains intact, the record is complete with doctors' reports and insurance claims, the witnesses are available, and there is no indication that the diminution in memory between the second and third year after the event is likely to be significant.

Moreover, as this court reasoned in *LePatourel,* in attempting to balance the equities of permitting a unique plaintiff subgroup to proceed on claims that accrued more than two years after the event against the right of the government to be free of stale claims: "We * * * agree * * * that the class of claimants similarly situated * * * cannot be so large as to threaten the interests protected by § 2401(b)." 593 F.2d at 832. Similarly, to allow Wollman to assert

---

**7.** *United States v. Kubrick,* 444 U.S. at 118, 100 S.Ct. at 357. As the Court cautioned: "In this case, for example, Kubrick would have been free to sue if Dr. Soma had not told him until 1975, or even 1980, instead of 1972, that the neomycin treatment had been a negligent act." *Id.* at 118, 100 S.Ct. at 357.

**8.** The original Statute of Limitations enacted in 1623 imposed limitations of four years for actions of trespass, assault and battery and limited actions of debt, detinue, replevin and actions on the case (predecessors of suits in contract) to six years. Present statutes have by and large retained the same two types of classifications, limiting actions in tort to two or three years and actions in contract to six years. *See Developments—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1192 (1950).

**9.** It can be argued that where, as it appears here, Congress creates a statute of limitations which simply aims at a legislative redefinition of earlier state statutes limiting tort actions, a construction which relates the statute's application to the existing traditional tort action is most appropriate. *Cf. Developments—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1194 (1950).

his claim would not markedly prejudice the ability of the government to defend.

The only defensible basis for shortcircuiting Wollman's dogged pursuit of a remedy would appear to be the formal value of a uniform federal rule.[10] Under the principles articulated above, the interaction of the FTCA with the limitation laws of the various states would affect whether claims accrued within two or three years. This would undercut the policy of simple repose for the United States—the undeniable purpose of a two-year limitation—insofar as the government would be subject to slight divergencies resulting from local rules. *Cf. Steele v. United States*, 599 F.2d 823, 826 (7th Cir. 1979). Yet this vaulting of form over substance contravenes the central compensatory and protective purposes of the Federal Tort Claims Act. As this court has indicated, the dominant purpose of the Act was to end the ancient injustice of tort immunity. "Congress, in waiving the sovereign immunity of the United States, intended that tort victims be compensated for injuries caused by the negligence of governmental employees." *United States v. LePatourel, supra*, 593 F.2d at 831. And the specific purpose of the section 2679(b) defense was "to protect the federal drivers from individual liability and from the necessity of carrying liability insurance." *Kelley v. United States, supra*, 568 F.2d at 266. Allowing Wollman to pursue his administrative claim would unquestionably further the compensatory purposes of the Act. Not to do so would create a perverse incentive for such a plaintiff to prove that the government erred in certifying that Gross was a federal employee acting within the scope of his employment. Such a result obviously undermines the very purpose of section 2679(b)–(d), which is to insulate federal employees from individual liability. *Cf. Kelley v. United States, supra*, 568 F.2d at 266.[11]

## IV.

In sum, I cannot agree that the result reached by the majority today accords with the congressional intent embodied in the Federal Tort Claims Act. Accordingly, I dissent.

---

**10.** It has been recognized that limitations on private actions against the sovereign, as in the present case, "serve the purpose not so much of fairness as of public convenience." Wollman's remediless position would appear to be a high price to pay for convenience. On the other hand, when the legislature limits the sovereign's right to proceed against private individuals, e. g., in criminal prosecutions, more fundamental values are furthered: "the defendant's special interest in not being compelled to put his freedom and his reputation at the hazard of what is likely to be parol evidence of imperfectly remembered events," as well as the minimal "social utility of punishing crimes long past." *See Developments—Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1186 (1950).

**11.** Moreover, to the extent that compensating victims and protecting federal employees from liability are objectives of the FTCA, it would appear only fair that if Gross, as an individual, could be sued during a three-year period, then the government, stepping into his shoes, should acknowledge an equivalent vulnerability.