Jay CANNADY, as Surviving Spouse of Victoria K. Cannady, and Jay Cannady, as Administrator of the Estate of Victoria K. Cannady, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. Civ.A.599CV4694WDO.

United States District Court, M.D. Georgia, Macon Division.

Aug. 14, 2001.

W. McMillan Walker, Dublin, GA, for Plaintiffs.

Melanie D. Wilson, Macon, GA, for Defendant.

## ORDER

OWENS, District Judge.

In this case the Court is called upon to determine whether Verna Wesby Hudson, a program technician in a county office of the Farm Service Agency, was, on November 6, 1997, a federal employee for purposes of the Federal Tort Claims Act. The Court finds that Hudson was a federal employee and, therefore, grants Defendant's Motion for Summary Judgment [Tab 31] and denies Plaintiff's Motion to Vacate [Tab 24], as more fully set forth below.

## I. Background

On November 6, 1997, a car driven by Verna Wesby Hudson collided with a Georgia Department of Transportation dump truck. Victoria K. Cannady, Hudson's passenger, died as a result of injuries sustained in the collision. Jay Cannady, as surviving spouse and administrator of Victoria Cannady's estate, brought suit in

state court against Hudson and the Georgia Department of Transportation.

Contending that Hudson was a federal employee acting in the course and scope of her employment at the time of the accident, the United States removed the case to this Court and moved to be substituted as the federal Defendant for any claims asserted against Hudson. The Court granted the motion to substitute and dismissed all claims against Hudson with prejudice. Thereafter, the United States filed a motion to dismiss, claiming that dismissal was appropriate because Cannady had failed to comply with the mandates of the Federal Tort Claims Act ("FTCA"). After allowing the parties the opportunity to pursue discovery, the Court denied the motion to dismiss, severed the claims against the Department of Transportation, and remanded those claims to the state court.

After the motion to dismiss was denied, Cannady moved the Court to vacate its Order granting removal and substituting the United States as Defendant for Hudson. Cannady also moved the Court to remand the case to state court. In response to Cannady's motions, the United States filed a motion for summary judgment, contending that the Court should find as a matter of law that Hudson was a federal employee, covered by the Federal Tort Claims Act, and that Cannady failed to comply with the terms of the Act in his action against Hudson. These motions are now before the Court.

## II. Findings of Fact

The evidence establishes the following: [1]

By statutory mandate, the Secretary of Agriculture was required to develop programs for agricultural land stabilization and conservation. The agricultural programs are supervised by the United States Department of Agriculture ("USDA") under the direction of a regional Deputy Administrator for State and County Operations. In each state, committees, comprised of farmers in the state, are responsible for carrying out the various programs assigned by the Secretary of Agriculture. The state committee members are selected by, and serve at the pleasure of, the Secretary of Agriculture. 7 C.F.R. § 7.4 (2001). Similar county committees implement the various agricultural programs throughout the counties. The county committee members are elected. The Burke County Farm Service Agency ("FSA"), formerly the Burke County Agricultural Stabilization Conservation Service ("ASCS") office, was created pursuant to this framework.

The day-to-day operations of the Burke County FSA are supervised by a County Executive Director. The County Executive Director is selected by the county committee, subject to standards and qualifications furnished by the state committee. The County Executive Director serves at the pleasure of the county committee; however, the Deputy Administrator retains the authority to suspend or remove the County Executive Director or any other county employee. 7 C.F.R. § 7.29 (2001). At the time of the accident here, the County Executive Director was Thomas B. Bryan. Bryan's salary was paid by the federal government; Bryan also received various federal benefits.

---

**1.** These facts are culled from the United States' Statement of Material Facts as to Which There is No Dispute, which are unrebutted by Cannady, see Local Rule 56, and from the factual recitations contained in Cannady's Memorandum of Law in Support of Plaintiff's Motion to Vacate, which the United States agrees are largely accurate although incomplete. (Resp. Pl.'s Mot. to Vacate at 2–3.)

At the time of the collision, Hudson held the position of Program Technician (formerly Program Assistant) for the Burke County FSA. Hudson's salary was paid by the federal government, she was covered by the Federal Employees Retirement System, and she received life insurance benefits under the Federal Employees Group Life Insurance Program. She also participated in the Federal Thrift Savings Plan and had health benefits under the Federal Employees Health Benefits Program. When Hudson began her employment at the Burke County FSA office, she was required to take an oath of office, vowing to carry out the laws and regulations of the USDA. She was also issued a Department of Agriculture identification card.

As a Program Technician, Hudson was responsible for administering USDA programs to producers and farmers. Specifically, Hudson was responsible for administering the following federal agricultural programs within the areas served by the Burke County FSA: (1) Compliance, (2) Sodbuster/Swampbuster, (3) Federal Crop Insurance Corporation, (4) Equal Employment Opportunity/Civil Rights Appeals, (5) Common Programs, (6) Disaster Programs, and (7) Farm Reconstitutions. In administering the various USDA programs, Hudson was expected to comply with the uniform standards set forth in various USDA handbooks. Hudson's work performance was evaluated by Bryan. The Director of the Human Resources Division of the USDA was shown as the "approving official" as to any personnel actions taken with respect to Hudson.

At the time of the accident at issue, Hudson was traveling to a work-related seminar entitled "Reconstitution and Agricultural Marketing Transition Act." Hudson's attendance at the seminar was required and had been approved by Ronald O. Carey, the Acting State Executive Director of the FSA.

### III. Conclusions of Law

It is well settled that sovereign immunity protects the United States from suit except to the extent that it consents to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). With the FTCA, Congress has authorized a limited waiver of sovereign immunity. *See* 28 U.S.C.A. § 1346(b) (West 1993 & Supp.2001); 28 U.S.C.A. §§ 2671–2680 (West 1994 & Supp.2001). However, a plaintiff seeking to recover against the United States must first file an administrative claim with the appropriate federal agency before filing suit in district court. *See* 28 U.S.C.A. § 2675(a) (West 1994); *Tidd v. United States*, 786 F.2d 1565, 1567 (11th Cir.1986). Here, it is undisputed that Cannady did not first file his tort claim with a federal agency. Therefore, if the Court determines that Hudson was a federal employee on November 6, 1997, this Court will lack subject-matter jurisdiction over Cannady's claims, and summary judgment for the United States would be warranted.

The FTCA defines "employee of the government" to include "officers or employees of any federal agency ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C.A. § 2671(1) (West Supp. 2001). Federal courts apply a "control test" to determine whether a person is an employee of the government for purposes of the FTCA. *Means v. United States*, 176 F.3d 1376, 1379 (11th Cir.1999) (citing *Lo-*

gue v. United States, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973)). Under the control test, "a person is not an 'employee of the government' for FTCA purposes unless the government controls and supervises the day-to-day activities of the individual." Id. As the United States Court of Appeals for the Eleventh Circuit noted in Means, "The central jurisdictional question under the FTCA remains whether the alleged tortfeasor is an 'employee of the government' and that determination is made by reference to the degree of physical control the government exercised." Id. at 1380.

Other courts that have been called upon to determine whether an individual is a federal employee for purposes of the FTCA have looked at such factors as who pays the employee's salary, the hierarchy of the office where the employee works, and under whose supervision the employee works. Thus, in Wollman v. Gross, 484 F.Supp. 598 (D.S.D.1980), aff'd, 637 F.2d 544 (8th Cir.1980), the district court found that the district director for the ASCS state office was a government employee because he was a full-time civil service employee paid by the federal government, he was in charge of agricultural programs and supervised county ASCS offices, and he was "controlled under the Secretary of Agriculture's hierarchy of command within the ASCS structure." Id. at 601. The United States contends that a similar result is demanded here.

Cannady, on the other hand, contends that a different line of cases controls. Cannady argues that the Court should follow the reasoning of the District Court for the Northern District of Alabama in Miller v. United States Department of Agriculture Farm Services, 966 F.Supp. 1087 (N.D.Ala.1997), aff'd, 143 F.3d 1413 (11th Cir.1998). In Miller, the district court found that an ASCS county director could not challenge his termination in a Bivens action because he had the right to judicial review of his termination under the Administrative Procedure Act. In reaching its conclusion, the district court noted that the plaintiff was not covered by the Civil Service Reform Act because he did not fit the definition of a federal employee contained within the Act. Id. at 1090. Cannady relies on this language in Miller and similar cases to support his argument that Hudson is not a federal employee for purposes of the FTCA. The Court finds these cases unpersuasive, however.

While it is certainly true that county ASCS employees are uniquely situated, governed as they are by both the USDA and state and county committees, their unique status does not necessarily preclude a determination that such employees are federal employees when the "control test" is applied to them. Furthermore, while it is also true that some ASCS employees are not "federal employees" as that term is defined in the Civil Service Reform Act, such a result does not preclude a finding that county ASCS employees are "federal employees" for other purposes. Indeed, as the cases relied on by Cannady note, county ASCS employees are included in the definitions of "employee" in other federal employment statutes, such as those governing civil service retirement programs and federal employee life and health insurance programs. See, e.g., id. at 1091.

The Court is persuaded that a determination as to whether Hudson was a federal employee is appropriately made here based on the amount of control and supervision the government exercised over her day-to-day activities. Moreover, the

Court finds that the evidence establishes that the federal government controlled Hudson's day-to-day activities. Certainly, no representative of the United States directly oversaw her daily work activities, but continuous supervision is not required. *See Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir.2000) (noting that "it is not necessary that the government continually control all aspects of the individual's activities, so long as it has the authority to do so given the nature of the task"). Hudson's day-to-day activities were clearly controlled by the government in that her activities were governed by an oath of office in which she swore to carry out the procedures of the ASCS and the Department of Agriculture. Her work practices were dictated by USDA handbooks, bulletins, and mailings, and the purpose of her work was to carry out USDA programs. With regard to her salary and benefits she was in every respect treated as a federal employee. Moreover, she believed herself to be a federal employee. (Hudson Dep. at 6.) Furthermore, at the time of the accident she was traveling at the direction of the USDA with the intended purpose of obtaining training in administering USDA programs.

While Cannady does not dispute the foregoing facts, he notes that documents in Hudson's personnel file show her employment status as that of a "non-federal employee." Cannady argues, therefore, that Congress did not intend to make county ASCS employees federal employees. (Pl.'s Mot. Vacate at 9.) The Court does not find these documents to be determinative with respect to the issue of whether Hudson was a federal employee for FTCA purposes. Kula Moore, an administrative officer of the Georgia State FSA office explained that the "non-federal" language

used on personnel documents means that "county office employees are ... appropriated under a different fund than the rest of the agencies and that's what makes them non-federal." (Moore Dep. at 9.) Moore further explained that the county employees are funded with federal money through the Commodity Credit Corporation. (Moore Dep. at 10.) Concerning the county office employees, Moore also testified, "For personnel actions they are marked as non-federal but for every other action they are treated and are considered federal employees." (Moore Dep. at 9.) Thus, the testimony concerning the use of the term "non-federal" suggests that it was not meant to indicate that the employees under that designation were not federal employees, only that they were funded from a different source.

Furthermore, Cannady has not directed the Court to any evidence that would show how, if at all, the county committee was involved in the daily operation of the Burke County FSA or otherwise controlled Hudson's daily activities. Rather, the weight of the evidence shows that USDA procedures, rules, and requirements controlled the day-to-day operations of Hudson's activities in the office. For these reasons, the Court is persuaded that Hudson was a federal employee for purposes of the FTCA at the time of the accident at issue here.

## IV. Conclusion

Because the Court finds that Hudson was a federal employee, it necessarily follows that Cannady was required to comply with the FTCA before initiating a lawsuit. Because Cannady failed to comply with the terms of the FTCA, the court lacks subject-matter jurisdiction to entertain this case. Accordingly, the United States' Mo-

tion for Summary Judgment is hereby **GRANTED.**[2] Cannady's Motion to Vacate is hereby **DENIED.**

---

2. Cannady concedes that if the Court finds that Hudson is a federal employee, granting the United States' Motion for Summary Judg- ment would be appropriate. (Pl.'s Resp. & Conditional Opp'n Mot.Summ.J. at 2.)